**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TIM GOLLOGLY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONDELĒZ INTERNATIONAL, INC., 905 West Fulton Market, Suite 200 Chicago, IL, 60607,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Tim Gollogly ("Plaintiff") individually and on behalf of himself and other similarly situated individuals, by and through his counsel, hereby files this Class Action Complaint for equitable relief and damages against Mondelēz International, Inc. ("Mondelēz" or "Defendant") regarding false and deceptive marketing and sale of cocoa products that display its "Cocoa Life" logo (the "Products"), which include such brands as Oreo, Toblerone, and Côte D'Or.[1] This lawsuit aims to counter misrepresentations to consumers suggesting that Defendant Mondelēz is using cocoa sourcing practices that are sustainable and free from forced labor. Mondelēz makes the misrepresentations in order to sell more Product, to its own profit. The misrepresentations are material, are uniformly made, and appear on the Product packaging itself, and consumers reasonably believe the misrepresentations.

"Cocoa Life" is Mondelēz's self-created global cocoa sustainability program, and Mondelēz claims that products displaying this logo are "made the right way" and "sustainable." But contrary to Mondelēz's claims, the supply and production of the Products contribute to

---

[1] Mondelēz markets numerous brands under its Cocoa Life certification program. *See Brands*, Mondelēz Int'l, https://www.cocoalife.org/brands/. All chocolate products marketed this way fall within the scope of this Complaint.

grievous and unsustainable labor abuses, including the worst forms of child and forced labor[2] ("child labor"), as well as other exploitative labor practices that are endemic in the cocoa industry. Mondelēz leads consumers to believe that its Cocoa Life logo, which incorporates the words "100% sustainably sourced cocoa," means that the Products are responsibly sourced in a way that "help[s] . . . cocoa farmers and their families flourish" and "protect[s] people & planet," and that the Products' supply chains are rigorously vetted for ethical labor standards and sustainable environmental practices. Reasonable consumers seeking to buy sustainable, responsibly sourced cocoa products are misled by the Cocoa Life logo on the Products because those Products are neither responsibly sourced nor environmentally sustainable. In fact, the Products are the result of child labor and destructive environmental practices, making them ***harmful*** to people and planet.

## INTRODUCTION

1.      This is a consumer-protection case concerning deceptive marketing representations made by Mondelēz about its Cocoa Life brands.

2.      The use of fair and sustainable labor practices is of growing concern to consumers, who increasingly seek out goods that are made without the use of forced labor, child labor, or exploitative working conditions, especially in industries known for the use of such practices.

3.      Cocoa farming has a well-publicized history of utilizing the worst forms of child labor and/or forced labor.[3] According to the 2020 NORC Report from the U.S. Labor Department,

---

[2] Child labor is defined by International Labour Organization ("ILO") Convention 138 on the Minimum Age for Admission to Employment and Convention 182 on the Worst Forms of Child Labor. *See What are Child Labor, Forced Labor, and Human Trafficking?*, U.S. Department of Labor ("DOL"), https://www.dol.gov/agencies/ilab/resources/what-is-child-labor-human-trafficking (last visited Aug. 14, 2024).

[3] Cocoa is listed as a good produced by child labor or forced labor, *see List of Goods Produced by Child Labor or Forced Labor*, DOL, https://www.dol.gov/agencies/ilab/reports/child-labor/list-of-goods (last visited Aug. 14, 2024).

about 1.56 million children work on cocoa farms in Côte d'Ivoire and Ghana,[4] the two countries that supply roughly two-thirds of the world's cocoa, including Mondelēz's. Much of this work is considered by international authorities to be among "the 'worst forms of child labor.'"[5] Reports have uncovered children as young as 10 years old being used for "arduous manual labor" to meet the demand on cocoa farms.[6]

4.     Consumers who wish to purchase more ethical products from industries that are known to have problematic supply chains rely on packaging, marketing, advertising, and relevant certifications in order to purchase products that align with their values, such as to avoid abuses in labor.

5.     Defendant Mondelēz, a privately held company based in Chicago, is one of the largest chocolate manufacturers in the world[7] and claims to be "mak[ing] cocoa right" by "turning cocoa into a business of choice, creating inclusive and empowered communities, and educating on forest conservation and restoration."[8]

6.     Mondelēz founded Cocoa Life in 2012 to, according to Defendant, "secure a supply of more sustainable cocoa."[9]

7.     Mondelēz's "approach" to its Cocoa Life program is to have independent farmers (not employed by Mondelēz) register for the program, which is mostly run by "NGOs, suppliers,

---

[4] *NORC Final Report: Assessing Progress in Reducing Child Labor in Cocoa Production in Cocoa Growing Areas of Cote d'Ivoire and Ghana*, NORC at the University of Chicago (Oct. 19, 2020), https://www.norc.org/PDFs/Cocoa%20Report/NORC%202020%20Cocoa%20Report_English.pdf.

[5] Peter Whoriskey and Rachel Siegel, *Cocoa's Child Laborers*, The Washington Post (June 5, 2019), https://www.washingtonpost.com/graphics/2019/business/hershey-nestle-mars-chocolate-child-labor-west-africa/.

[6] *Id.*

[7] Kate Birch, *Top 10 largest chocolate companies*, Food Digital (July 7, 2021), https://fooddigital.com/food/top-10-largest-chocolate-companies.

[8] *Cocoa Life*, Mondelēz Int'l, https://www.mondelezinternational.com/snacking-made-right/esg-topics/cocoa-life/ (last visited Aug.15, 2024).

[9] *Id.*

governments and other partners" funded by Mondelēz.[10]

8.     Mondelēz uses the Cocoa Life logo on its Products to mislead consumers by misrepresenting that its Products support a "vibrant" supply chain that "transform[s] the livelihoods of farmers and their communities," when in fact the company's supply chains are linked to farms in Ghana where children as young as 10 years old work with machetes and farmers are paid less than two euro per day.[11]

9.     Mondelēz tells consumers that the Products "protect the planet" and "respect the human rights of people within our own operations and in our value chain" but offers no publicly available standards to support, back up, or underlie that marketing.[12]

10.     Consequently, Mondelēz's marketing—which leads consumers to believe that the cocoa in its Products is responsibly sourced and "sustainable"—is false and misleading.

11.     By deceiving consumers about the nature and quality of its Products, Mondelēz is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take market share away from competing products, thereby increasing its own sales and profits.

12.     Because Mondelēz's marketing of the Products tends to mislead and is materially deceptive about the true nature and quality of the Products, Plaintiff Gollogly brings this case on behalf of himself, and all others similarly situated and seeks equitable and monetary relief.

---

[10] *Building a More Promising Future for Cocoa Communities*, Cocoa Life, https://www.cocoalife.org/the-program/approach/ (last visited Aug. 15, 2024).

[11] *Cocoa Life*, Mondelēz Int'l, https://www.cocoalife.org/ (last visited Aug. 15, 2024); Jon Ungoed-Thomas, *Cadbury faces fresh accusations of child labour on cocoa farms in Ghana*, The Guardian (Apr. 3, 2022), https://www.theguardian.com/law/2022/apr/03/cadbury-faces-fresh-accusations-of-child-labour-on-cocoa-farms-in-ghana.

[12] *Child Protection*, Mondelēz Int'l, https://www.cocoalife.org/the-program/child-protection/ (last visited Aug. 15, 2024); *Child Labor*, Mondelēz Int'l, https://www.mondelezinternational.com/snacking-made-right/esg-topics/child-labor/ (last visited Aug. 15, 2024); *So-Called Sustainable Programs are Failing Cocoa Farmer and Their Families: How Nestle and Mondelez Greenwash—and Labor Wash—Their Chocolate Products*, Corporate Accountability Lab (Feb. 23, 2023), https://corpaccountabilitylab.org/calblog/2023/2/15/so-called-sustainability-programs-are-failing-cocoa-farmers-and-their-families-how-nestl-and-mondelez-greenwash-and-labor-wash-their-chocolate-products.

## FACT ALLEGATIONS

I.      **Mondelēz Represents that the Cocoa Contained in the Products Is Responsibly Sourced and Sustainable.**

13.     Defendant Mondelēz displays the Cocoa Life logo on its Products, representing to consumers that these Products are sustainably and responsibly sourced. An example of this marketing tactic is seen in the image reproduced below.[13]



14.     On some Mondelēz Products, such as the Oreo cookies in the image reproduced below, the Cocoa Life logo appears alongside the representation that Mondelēz cocoa is "100% sustainably sourced."[14]

---

[13] *Toblerone Chocolate Gift Box (Milk Chocolate, White Chocolate, & Milk Chocolate with Salted Caramelized Almonds Chocolate Bars), 1 Gift Box (9 – 3.52 oz Bars)*, Amazon, https://www.amazon.com/Toblerone-Chocolate-Crunchy-Salted-Caramelized/dp/B08J37H3QK (last visited July 11, 2024).

[14] *OREO Chocolate Sandwich Cookies, Family Size, 3 Packs*, Amazon, https://www.amazon.com/Oreo-Chocolate-Sandwich-Cookies-Family/dp/B07ZR3D5T9 (last visited July 11, 2024).



15.     Mondelēz expands upon these claims on the back of the Oreo packaging, representing that, through the Cocoa Life program, Mondelēz "supports sustainable cocoa sourcing" and "helps protect people & planet."[15]

---

[15] *Id.*



16. Mondelēz makes similar representations on its Côte D'Or Products, which feature the Cocoa Life logo on the front of the packaging and elaboration of those promises on the back of the packaging, as seen in the image reproduced below.



17. On the back of this Côte D'Or packaging, Mondelēz represents that it "help[s] . . . cocoa farmers and their families flourish," and "improve[s] their living conditions," and also "improve[s] . . . agricultural practices for today and tomorrow," as seen in the image below:



18.     Should any consumers seek more information about the Cocoa Life promises, the packaging of these Products direct them to the Cocoa Life website; that website, by way of further elaboration, explains that Cocoa Life Products "help enhance child protection systems and improve access to quality education in Cocoa Life communities," "[e]mpower[] women at an individual, household and community level," "[h]elp[] to lift cocoa communities," and "[h]elp[] to protect and restore forests."[16]

19.     Mondelēz states that, as a part of its Cocoa Life strategy, it "believe[s] the entire cocoa sector should be free of child labor."[17]

20.     Mondelēz boasts of being a "founding member of the Cocoa & Forests Initiative (CFI), alongside the governments of Côte d'Ivoire and Ghana, and 36 other world-leading chocolate and cocoa companies to help decrease deforestation and restore forest areas."[18]

---

[16] *Child Protection*, *supra* note 12; *Women's Empowerment*, Mondelēz Int'l, https://www.cocoalife.org/the-program/womens-empowerment/ (last visited Aug. 15, 2024); *Building a More Promising Future for Cocoa Communities*, *supra* note 10.

[17] *Cocoa Life Strategy to Protect Children*, Mondelēz Int'l (Oct. 2022), at 7 https://assets.ctfassets.net/qggsjlmpzfmx/46ZaloWwp1bdHkIEVbOP2E/4fbc2b8c4682393b77b591a1b11fb29b/cocoa-life-strategy-to-help-protect-children.pdf.

[18] *Deforestation*, Mondelēz Int'l, https://www.mondelezinternational.com/snacking-made-right/esg-topics/deforestation/ (last visited Aug. 15, 2024)

21.     Mondelēz presents itself as an industry member of the International Cocoa Initiative ("ICI"), a nonprofit dedicated to "[p]reventing and addressing child labour and forced labour in cocoa."[19]

22.     Mondelēz advertises that it has "signed the Harkin-Engel Protocol," a voluntary commitment by cocoa companies "to end the [] use of child labor, including forced labor, in West African cocoa production by 2005."[20]

## II.     Mondelēz's Cocoa Life Products Are Not Sustainable and Are Linked to Unfair Labor Practices, Hazardous Child Labor, and Deforestation.

23.     Contrary to Mondelēz's representations, the Cocoa Life Products are neither responsibly sourced nor sustainable.

### A.     Mondelēz's Cocoa Life Certified Products Are Linked to Unfair Labor Practices and Hazardous Child Labor.

24.     The sourcing and production of the cocoa used in these Products involves unfair labor practices, hazardous child labor, and exploitative working conditions.[21]

25.     For example, a recent report by the *Washington Post* revealed that "[a]bout two-thirds of the world's cocoa supply," including Mondelēz's, "comes from West Africa,"[22] where, according to a DOL-funded NORC Report, more than 1.56 million children work in the cocoa sector, including 1.48 million children who have been "exposed to at least one component of hazardous child labor in cocoa production."[23]

---

[19] ICI, https://www.cocoainitiative.org/ (last visited Aug. 15, 2024).
[20] *Mondelez*, Advance ESG, https://www.advanceesg.org/projects/shareholder-resolutions/mondelez/ (last visited Aug. 15, 2024).
[21] Adrian Horton, *John Oliver on child labor in the chocolate industry: 'It is worse than you may realize,'* The Guardian (Oct. 30, 2023), https://www.theguardian.com/tv-and-radio/2023/oct/30/john-oliver-last-week-tonight-chocolate-industry-child-labor. The ICI also states that "[a]lmost half of children living in cocoa-growing areas in Côte d'Ivoire and Ghana are estimated to be involved in child labour." *See supra* note 19.
[22] Whoriskey, et al., *supra* note 5.
[23] NORC, *supra* note 4, at 10.

26.     This investigation uncovered that many of the workers on these farms were either Ivorian children working on their families' farms but performing illegal hazardous work in violation of ILO Convention No. 182, or children trafficked from nearby countries, mainly Burkina Faso and Mali, and forced to work on these farms. The report detailed hazardous working conditions and unfair treatment that these children endure.

27.     The article names Mondelēz as one of the companies that can **not** "guarantee that any of their products were free of child labor."[24]

28.     A 2022 documentary exposed child labor plantations in Ghana that participate in "Cocoa Life."[25] After one child laborer, who had been forced to work on a Mondelēz plantation from ages 10-19, was filmed performing hazardous work on a Mondelēz plantation, she and her family were threatened and offered bribes by agents of Mondelēz to recant her story.[26]

29.     An October 2023 investigation conducted by an anti-slavery organization also uncovered instances of child labor on numerous plantations with direct sourcing relationships with Mondelēz. In fact, the investigation found that **most** of the workers on these plantations supplying Mondelēz were children.[27]

30.     Generally, farmers on typical Ivorian and Ghanaian cocoa farms, from which Mondelēz sources a portion of its cocoa,[28] live well below what the World Bank defines as poverty, earning less than one dollar per day.[29]

---

[24] Whoriskey, et al., *supra* note 5.

[25] Jon Ungoed-Thomas, *supra* note 11.

[26] *Kassim et al. v. Cargill et al.*, No. 2023-CAB-007264 (D.C. Super. Ct., Nov. 28, 2023), Compl., at ¶ 10.

[27] *Id.* at ¶ 13-14.

[28] *More Sustainable Ingredients*, Mondelēz, https://www.mondelezinternational.com/snacking-made-right/sustainable-ingredients/ (last visited Aug. 15, 2024).

[29] Whoriskey, et al., *supra* note 5; Antoine C. Fountain & Friedel Huetz-Adams, *2020 Cocoa Barometer*, Voice Network (2020), https://www.voicenetwork.eu/wp-content/uploads/2021/03/2020-Cocoa-Barometer-EN.pdf; *Child Labor and Slavery in the Chocolate Industry*, Food Empowerment Project, https://foodispower.org/human-labor-slavery/slavery-chocolate/ (last visited Aug. 15, 2024).

31.     In 2021, Mondelēz was accused by Côte d'Ivoire's cocoa regulator of "offsetting the Living Income Differential (LID) by offering a negative country differential."[30] In other words, Mondelēz was accused of ***not*** paying the premium that is essential to keeping cocoa farmers out of poverty.

32.     Still, Mondelēz continues to market the Products as containing cocoa that is "certified" by its Cocoa Life program, which Mondelēz does in order to lead consumers to believe that exploitative labor practices are not used in the Products. Mondelēz knows or should know that these representations create a false impression in the minds of consumers because Mondelēz is aware that exploitative labor exists within its supply chain.

33.     Thus, although Mondelēz markets to consumers that the cocoa in its Products is "100% sustainably sourced cocoa," "help[ing]. . . cocoa farmers and their families flourish," and "protect[ing] people & planet," the reality of the Products' supply chain reveals that these claims are false and deceptive.

**B.     Mondelēz's Cocoa Life Products Contribute to Deforestation and Are Not Sustainable.**

34.     Deforestation is associated with cocoa harvesting.[31] The cocoa industry is a major driver of deforestation and loss of critical wildlife habitat around the world, but "particularly in West Africa,"[32] whence Mondelēz sources much of its cocoa.

35.     About one-third of forest loss in Côte d'Ivoire and Ghana has occurred from cocoa production over the last 60 years.[33] This is because the monocropping systems used to cultivate

---

[30] Ange Aboa, et al., *Ivory Coast says chocolate traders failing to pay farmers living wage premium*, Reuters (June 19, 2021), https://www.reuters.com/world/africa/ivory-coast-says-chocolate-traders-failing-pay-farmers-living-wage-premium-2021-06-18/.

[31] Nikolai Kalischek, et al., *Cocoa plantations are associated with deforestation in Côte d'Ivoire and Ghana*, Nature Food (May 22, 2023), https://www.nature.com/articles/s43016-023-00751-8.

[32] *Cocoa and Deforestation*, NWF International Wildlife Conservation, https://international.nwf.org/cocoa-and-deforestation/ (last visited Aug. 15, 2024).

[33] *Id.*

cocoa rely on the planting and production of one crop, reducing the availability of certain nutrients, and degrading the soil, and usually requiring a heavy reliance on pesticides and other chemicals, which then pollute the soil as well as adjacent rivers and streams, threatening wildlife and disrupting food systems.[34]

36.     According to the UN's Food and Agriculture Organization, nearly 4 million hectares of African forests are being cut down each year, almost double the speed of the world's deforestation average, with cocoa farming contributing to much of the deforestation.[35]

37.     Although the world's major cocoa companies, including Mondelēz, signed an initiative to harvest cocoa more sustainably and prevent deforestation, the lack of traceability and supply chain transparency prevent the halt of cocoa-driven forest loss.[36]

38.     Last year, Rainforest Action Network, an environmental organization, released its Keep Forests Standing report card, where Mondelēz received an "F" grade for being among the *worst* performing brands regarding the effort "to remove destruction of forests and violations of human rights from [] business operations"[37]

39.     Specifically, Mondelēz was called out for not "holding bad actors to account," for not having "proof of free, prior and informed consent," and for not having "independent verification" of compliance with its "No Deforestation, No Peat and No Exploitation" commitment.[38]

---

[34] Martina Igini, *How Does Cocoa Farming Cause Deforestation?*, Earth.org (July 7, 2023), https://earth.org/how-does-cocoa-farming-cause-deforestation/.

[35] *Id.*

[36] Terry Slavin, *After five years, recipe to end deforestation from cocoa farming remains elusive*, Reuters (Jan. 20, 2023), https://www.reuters.com/business/sustainable-business/after-five-years-recipe-end-deforestation-cocoa-farming-remains-elusive-2023-01-20/; *see also Joint Framework for Action Côte d'Ivoire*, Cocoa & Forests Initiative (Sept. 21, 2022), https://jaresourcehub.org/wp-content/uploads/2023/03/CDI-Framework-English-9.21.22.pdf (signed by Mondelēz's European division).

[37]     *Keep Forests Standing*, Rainforest Action Network (2023), at 3, 17 https://www.ran.org/wp-content/uploads/2023/11/KFS_Scorecard_2023.pdf.

[38] *Id.* at 17.

40. Mondelēz's Cocoa Life Products are not sustainably produced. Indeed, until changes are made, cocoa harvesting is inherently unsustainable due to its significant contribution to deforestation throughout the world and specifically in Africa, where Mondelēz sources the cocoa in the Products.

**III. Mondelēz's Representations Are Material and Misleading to Consumers.**

41. Mondelēz's false and misleading representations that the cocoa used in its Cocoa Life Products is "100% sustainably sourced cocoa," "help[ing] . . . cocoa farmers and their families flourish," and "protect[ing] people & planet" are material to consumers.

42. The Federal Trade Commission ("FTC") has admonished companies not to use unqualified claims such as "sustainable" because "it is highly unlikely that they can substantiate all reasonable interpretations of these claims."[39]

43. Furthermore, according to the FTC, marketers retain responsibility for substantiating all claims that are reasonably communicated by a third-party certification.[40] The "Cocoa Life" seal is Mondelēz's own purported certification, which increases its responsibility to substantiate the claims it communicates with that seal.

44. Environmental representations are material to consumers. In fact, "68% [of Americans] would pay more for sustainable products."[41]

45. A 2021 global survey, which included the United States, found that "86 percent of consumers try to avoid products that damage biodiversity and almost seven in ten of global

---

[39] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures,* FTC (Apr. 2, 2019), https://www.ftc.gov/news-events/press-releases/2019/03/ftc-sends-warning-letters-companies-regarding-diamond-ad; *see also* FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).

[40] *See* 16 C.F.R. § 260.6(c).

[41] *Interest in Sustainability Surges for Consumer Products*, Computer Generated Solutions Inc., https://www.cgsinc.com/en/resources/interest-sustainability-surges-consumer-products (last visited Aug. 15, 2024).

consumers want to choose products that do not contribute to climate change."[42] The results of that survey are depicted in the graphic below.



46.     As mentioned *supra* § I, the Products feature sustainability language and the accompanying "Cocoa Life" seal on their label. A 2023 survey found that "71% of consumers are more likely to believe a company's sustainability claims if they are printed directly on the product or packaging."[43]

[42] *2021 Global Consumer Research reveals escalating concerns about climate change and threats to forest biodiversity*, Forest Stewardship Council (2021), https://asiapacific.fsc.org/consumer-research-insights.

[43] Specright, *Survey Reveals Consumers Prioritize Purchasing Sustainable Products and Desire Greater Transparency from Companies on Sustainability Progress*, PR Newswire (Nov. 15, 2023), https://www.prnewswire.com/news-releases/survey-reveals-consumers-prioritize-purchasing-sustainable-products-and-desire-greater-transparency-from-companies-on-sustainability-progress-301988839.html.

47.     Consumers also care deeply about exploitative labor practices in supply chains. A national survey found that "60 percent of consumers would stop using a product if they knew that human trafficking or forced labor was used to create it."[44]

48.     A majority of consumers would stop buying from brands that they believe are unethical. Moreover, "over one third (35 percent) of consumers would stop buying from brands they perceive as unethical even if there is no substitute available."[45] Additionally, 63 percent of "consumers feel that ethical issues are becoming more important."[46]

49.     A survey of 5,000 consumers showed that significant segments of the national consumer base prioritize "more transparency from food producers and retailers," "accountability and transparency through the entire food supply chain," and "fair treatment of workers."[47]

50.     Another survey found that "81 percent" of consumer respondents said that "purchasing ethically sourced and/or produced products matters,"[48] and a study showed that consumers are more likely to buy a product marketed as ethical and sustainable, with the "data show[ing] a positive correlation between [product] growth rate and . . . multiple types of [environmentally and socially responsible] claims."[49]

---

[44] Stephen DeAngelis, *Even If Consumers Aren't Aware of Human Trafficking, Companies Need to Be*, Enterra Solutions, (Mar. 6, 2020), https://enterrasolutions.com/blog/even-if-consumers-arent-aware-of-human-trafficking-companies-need-to-be/.

[45] *56% of Americans stop buying from brands they believe are unethical*, Mintel (Nov. 18, 2015), https://www.mintel.com/press-centre/56-of-americans-stop-buying-from-brands-they-believe-are-unethical/.

[46] *Id.*

[47] News Desk, *Consumer survey shows changing definition of food safety*, Food Safety News (Feb. 4, 2016) https://www.foodsafetynews.com/2016/02/123246/.

[48] Steve Banker, *Do Consumers Care About Ethical Sourcing?*, Forbes (Oct. 5, 2021), https://www.forbes.com/sites/stevebanker/2021/10/05/do-consumers-care-about-ethical-sourcing/?sh=4c6fe92c5f50.

[49] *Consumers care about sustainability – and back it up with their wallets*, McKinsey & Company, (Feb. 6, 2023), https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets.

51.     When it comes to child labor, more than 75 percent of consumers would no longer purchase from brands they knew were employing child labor, even if the consumers had often bought from these brands in the past.[50]

52.     Previous studies have also shown that shoppers are willing to pay a premium for products containing "labels with information about certified fair labor standards."[51]

53.     Defendant Mondelēz is aware that consumers are willing to pay more for sustainably sourced chocolate, and tailors its marking to present its cocoa as sustainable in order to sell more Products at higher prices.

**PARTIES**

54.     Defendant Mondelēz International is headquartered in Chicago, Illinois and incorporated in Virginia. Mondelēz is a confectionary company and one of the largest producers of chocolate products in North America. The Products at issue are available in a wide variety of national supermarket chains, regional stores, and other outlets, including stores in Illinois and in this District.

55.     Defendant Mondelēz ranked No. 115 on the 2024 Fortune 500 list,[52] and its 2023 annual revenue was about $36 billion.[53] Its major consumer chocolate products are Oreos, Cadbury, and Toblerone, among others. Mondelēz admits to sourcing cocoa from six countries:

---

[50] *Majority (55%) of Americans Willing to Pay More for Clothing Not Made Using Child Labor*, Ipsos (July 18, 2013), https://www.ipsos.com/en-us/majority-55-americans-willing-pay-more-clothing-not-made-using-child-labor ("The average American, overall, is willing to pay approximately 19% more for clothing purchases made without the use of child labor. Among those who say they're willing to pay more, the average person is willing to pay 34% more.").

[51] Michael J. Hiscox, *Consumer Demand for Fair Labor Standards: Evidence from a Field Experiment on eBay*, Elsevier Inc. (Apr. 12, 2011), https://scholar.harvard.edu/files/hiscox/files/consumer_demand_fair_labor.pdf.

[52] *Global Awards and Honors,* Mondelēz Int'l, https://www.mondelezinternational.com/about-us/awards/ (last visited Aug. 15, 2024).

[53] *Mondelēz International Reports Q4 and FY 2023 Results*, Mondelēz Int'l, https://ir.mondelezinternational.com/news-releases/news-release-details/mondelez-international-reports-q4-and-fy-2023-results (last visited Aug. 15 2024).

"Ghana, Côte d'Ivoire, Indonesia, Dominican Republic, India and Brazil."[54]

56.    Plaintiff Gollogly is an individual consumer and citizen of Chicago, Illinois.

57.    During the Class Period, Plaintiff Gollogly purchased Oreo cookies and Toblerone chocolate, each Product bearing the representations at issue, approximately three times between June 2023 and January 2024 at Mariano's and Jewel-Osco stores.

58.    Plaintiff Gollogly, when he purchased the Products, saw the marketing related to Cocoa Life and believed that the Products' supply chain were ethically sourced and/or free from child labor, human rights abuses and environmentally damaging practices based on the Cocoa Life logo and additional representations displayed on the Products' packaging.

59.    The Cocoa Life and sustainability representations of the Products were material to Plaintiff Gollogly and encouraged him to make his purchases. Plaintiff Gollogly relied upon these representations, which as a consumer he had no reason to doubt.

60.    Plaintiff Gollogly would not have purchased the Products or would not have purchased the Products on the same terms, if he had known that contrary to Mondelēz's representations, the Products were not ethically sourced, but that, in fact, unfair labor practices and hazardous child labor were present in the Products' supply chain.

61.    As a direct result of Mondelēz's material misrepresentations and omissions, Plaintiff Gollogly suffered, and continues to suffer, economic injuries.

62.    Plaintiff Gollogly likes chocolate and enjoyed consuming the Oreo and Toblerone Products he purchased. Plaintiff Gollogly would like to be able to purchase these Products on an ongoing basis and would do so if he could be certain of the truthfulness of the marketing, for

---

[54] Maggie McKerr, *Mondelēz International Commits To Secure 100 Percent Cocoa Volume For All Chocolate Brands Through Its Cocoa Life Sustainability Program By 2025*, Mondelēz Int'l (Apr. 30, 2019), https://ir.mondelezinternational.com/news-releases/news-release-details/mondelez-international-commits-secure-100-percent-cocoa-volume.

example if Mondelēz could demonstrate that it's sourcing practices actually accorded with the marketing representations.

63.     On July 23, 2024, Plaintiff sent Mondelēz a pre-suit notice letter via certified mail regarding the allegations set forth in this Complaint, which includes violations of state consumer protection law, breach of warranty, and unjust enrichment and demanded that within thirty (30) days from those dates, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendants refused to do so, a complaint seeking damages would be filed. Defendants received the letter on August 5, 2024, but they have failed to take corrective action.

64.     Accordingly, Plaintiff Gollogly, on behalf of himself and all other members of the proposed Class, seeks relief, including punitive damages, from Mondelēz's acts and practices.

## JURISDICTION AND VENUE

65.     This Court has personal jurisdiction over the parties in this case.

66.     Defendant Mondelēz regularly conducts and transacts business in Illinois, purposefully avails itself of the laws of Illinois, markets the Products to consumers in Illinois, and sells the Products throughout Illinois.

67.     Plaintiff Gollogly's claims arise out of, and relate to, the conduct of Mondelēz within Illinois.

68.     Mondelēz's Products can be found throughout the state of Illinois at various retailers.

69.     Based on the foregoing, the exercise of jurisdiction over Defendant is reasonable under the circumstances.

70.     Plaintiff Gollogly is a citizen of Illinois and consents to this Court's jurisdiction.

71.     This Court has original subject-matter jurisdiction over this proposed class action

pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class comprises at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff Gollogly alleges that the total claims of individual members of the proposed Class (as defined herein) exceed $5,000,000 in the aggregate, exclusive of interest and costs.

72.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District.

## CLASS ALLEGATIONS

73.     Plaintiff Gollogly brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

74.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Product (as defined herein) in Illinois during the Class Period (the "Illinois Subclass").

75.     Excluded from the Class are (1) Defendant Mondelēz, (2) any entity or division in which Defendant has a controlling interest, (3) Defendant's legal representatives, officers, directors, assigns, and successors; and (4) the judge to whom this case is assigned, as well as the judge's staff.

76.     Questions of law and fact common to all Class members predominate over questions affecting only individual Class members.

77. Because primary representations about the Products are included on the packaging itself, Class members necessarily see those representations when choosing whether to purchase and to pay the requested price for those Products.

78. The representations at issue are uniformly made.

79. Questions of law and fact common to Class members and their claims include, without limitation:

(a) Whether, and in which proportion, Mondelēz is responsible for the advertising at issue;

(b) Whether the advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

(c) Whether Mondelēz breached a warranty created through the marketing of the Products; and

(d) Whether Mondelēz's conduct as set forth above injured Plaintiff Gollogly and Class members.

80. Plaintiff Gollogly's claims are typical of the claims of the Class in that he was a consumer exposed to Defendant Mondelēz's false and misleading marketing, promotional materials, and representations; he purchased Products at the requested prices in a retail setting; and he suffered a loss as a result of those purchases, specifically, as a result of Mondelēz's representations about the Products being untrue.

81. The precise number of the Class members and their identities are unknown to Plaintiff Gollogly at this time but may be determined through discovery.

82. Plaintiff Gollogly is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions involving false advertising, and he intends to prosecute this action vigorously.

83.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the litigation necessary to establish Mondelēz's liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments. The substantive claims of Plaintiff Gollogly and the Class are identical or nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

84.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Gollogly's and the Class members' claims together is manageable. Unless the Class is certified, Defendant Mondelēz will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

85.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

86.     The prerequisites to maintaining a class action for equitable relief are met. By representing that the supply chain of its Products is sustainable and that it is taking substantial steps to address child and forced labor despite the presence of unsustainable practices and hazardous child labor in the supply chain, Defendant Mondelēz has acted or refused to act on

grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

87.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant Mondelēz. Additionally, individual actions could be dispositive of the interests of the Class, in practice, even where certain Class members are not parties to such actions and do not have the representation that Rule 23 provides.

88.     Defendant Mondelēz's conduct is generally applicable to the Class as a whole, and Plaintiff Gollogly seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

89.     Plaintiff Gollogly knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I

**Violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act § 505/2
(On Behalf of Plaintiff Gollogly and the Illinois Subclass)**

90.     Plaintiff Gollogly realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

91.     The acts of Defendant Mondelēz, as described above, constitute unlawful, deceptive, and fraudulent business acts and practices.

92.     Defendant Mondelēz markets the Products using the Cocoa Life logo, bearing the words "100% sustainably sources cocoa," and representing that "together we help Cocoa Life cocoa farmers and their families flourish," "help to improve their living conditions," and "protect

people & planet," when investigation reveals the Products were and are sourced using unfair labor practices, hazardous child labor, and environmentally unsustainable practices.

93.     Defendant Mondelēz has violated, and continues to violate, § 505/2 of the Illinois Business Transactions Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 505/2, Plaintiff Gollogly and other members of the Illinois Subclass have suffered damages in an amount to be determined at trial.

94.     Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff Gollogly and the Illinois Subclass members to purchase the Products and to pay the requested price for them when they otherwise would not have done so, or would not have purchased as much.

95.     Defendant Mondelēz made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

96.     Plaintiff Gollogly and the Illinois Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and paid for, and which they selected over other products that may have been truthfully marketed.

97.     Defendant's advertising induced Plaintiff Gollogly and the Illinois Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

98.     As a direct and proximate result of Defendant's violation of § 505/2, Plaintiff Gollogly and other members of the Illinois Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

99.     By reason of the foregoing, Plaintiff Gollogly and the Illinois Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to § 505/10a(a) and (c).

**COUNT II**

**Violations of the Illinois**
**Uniform Deceptive Trade Practices Act § 510/2**
**(On Behalf of Plaintiff Gollogly and the Illinois Subclass)**

100.     Plaintiff Gollogly realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

101.     The acts of Defendant Mondelēz, as described above and herein, constitute unlawful, deceptive, and fraudulent business acts and practices.

102.     Illinois Business Transactions Law § 510/2 makes deceptive trade practice unlawful.

103.     Section 510/2(a)(2) defines "deceptive trade practice," in relevant part, as occurring when the person "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services."

104.     Plaintiff Gollogly and the members of the Illinois Subclass are consumers who purchased Defendant's Products in Illinois.

105.     As a seller of goods to the consuming public, Defendant Mondelēz is engaged in the conduct of business, trade, or commerce within the intended ambit of § 510/2.

106.     Defendant Mondelēz's representations (made by statement, word, design, device, sound, or any combination thereof), and also to the extent to which Mondelēz's advertising has failed to reveal material facts with respect to its Products, as described above, have constituted false advertising and deceptive trade practices in violation of § 510/2.

107.     Defendant Mondelēz's willful actions have led to direct, foreseeable, and proximate injury to Plaintiff Gollogly and the members of the Illinois Subclass.

24

108. As a consequence of Defendant Mondelēz's deceptive marketing scheme, Plaintiff Gollogly and the other members of the Illinois Subclass suffered an ascertainable loss, insofar as, had the truth about the Products' nature and quality been known, they would not have purchased the Products, would not have paid the requested price for the Products, and/or would have purchased fewer of the Products.

109. As a result of Mondelēz's conduct, Plaintiff Gollogly and the other members of the Illinois Subclass received products of less value than what they paid for.

110. By reason of the foregoing, Plaintiff Gollogly and the Illinois Subclass members are entitled to (1) reasonable attorneys' fees and (2) injunctive relief, pursuant to § 510/3.

## COUNT III

### Violation of State Consumer Protection Statutes
### (on Behalf of Plaintiff Gollogly and All Class Members)

111. Plaintiff Gollogly realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

112. Defendant Mondelēz markets the Products using the Cocoa Life logo, bearing the words "100% sustainably sourced cocoa," and representing that "together we help Cocoa Life cocoa farmers and their families flourish," "help to improve their living conditions," and "protect people & planet," when investigation reveals the Products were and are sourced using unfair labor practices, hazardous child labor, and environmentally unsustainable practices.

113. Defendant's unfair, false, misleading, and fraudulent practices in marketing the Products, as alleged herein, violate the following state consumer protection statutes to the extent that Defendant's Products have been marketed in, and purchased by Class Members in the respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§17200,

17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat. § 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 ILCS 505/2 & 510/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3), §13-303; Mass. Gen.Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

114.   Notice of these violations of state consumer protection law was provided to Defendant Mondelēz as described in *supra* ¶ 63, which is incorporated by reference as if fully set forth in this Count.

115.   Plaintiff Gollogly, on behalf of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT IV

**Breach of Express Warranty**
**(on Behalf of Plaintiff Gollogly and All Class Members)**

116.     Plaintiff Gollogly realleges and reincorporates by reference all paragraphs alleged above.

117.     Plaintiff Gollogly brings this claim individually and on behalf of the Class.

118.     Throughout the Product packaging, and then on its website, which is easily accessible to consumers, Defendant Mondelēz provided Plaintiff Gollogly and other members of the Class with written, express warranties that the cocoa in these chocolate Products was sustainably sourced and that actions were taken that would prevent child/forced labor in the supply chain.

119.     This affirmation of fact or promise by Defendant Mondelēz relates to the goods and became part of the basis of the bargain.

120.     Plaintiff Gollogly and members of the Class purchased the Products believing them to conform to the express warranties.

121.     Defendant breached these warranties, resulting in damages to Plaintiff Gollogly and other members of the Class, who bought Defendant's Products but did not receive the goods as warranted.

122.     As a proximate result of the breach of warranties by Mondelēz, Plaintiff Gollogly and the other members of the Class did not receive the goods as warranted. Had Plaintiff Gollogly and the Class members known the true facts, *i.e.*, that the Products did not confirm to the warranty, they would not have purchased Defendant's Products, or would have purchased the Products on different terms, or would have purchased fewer of the Products.

123. Notice of these breaches of warranty was provided to Defendant Mondelēz as described in *supra* ¶ 63, which is incorporated by reference as if fully set forth in this Count.

124. Plaintiff Gollogly and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

## COUNT V

**Unjust Enrichment**
**(on Behalf of Plaintiff Gollogly and All Class Members)**

125. Plaintiff Gollogly realleges and reincorporates by reference all paragraphs alleged above.

126. Plaintiff Gollogly brings this claim individually and on behalf of the Class.

127. To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Federal Rule of Civil Procedure 8.

128. Plaintiff Gollogly and the members of the Class conferred benefits on Defendant Mondelēz by purchasing the Products.

129. Defendant Mondelēz was unjustly enriched by receipt of these revenues derived from the purchases of Plaintiff Gollogly and the members of the Class.

130. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented its Products as sustainably sourced and responsible, when they in fact are neither sustainably sourced nor responsible.

131. Plaintiff Gollogly and members of the Class were damaged by Defendant's misrepresentations because they would not have purchased the Products, or would have purchased them only on different terms, if the true facts were known.

132. Because Defendant Mondelēz's retention of the non-gratuitous benefits conferred on it by Plaintiff Gollogly and the members of the Class is unjust and violates the fundamental

principles of justice, equity, and good conscience, Defendant Mondelēz has been unjustly enriched in an amount to be determined at trial.

133.   Plaintiff Gollogly and the members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gollogly respectfully requests that the Court enter judgment in his favor and in favor of the Class as follows:

A.   An order certifying the proposed Class and Subclass; appointing Plaintiff Gollogly as representative of the Class and Subclass; and appointing Plaintiff Gollogly's undersigned counsel as class counsel for the Class and Subclass;

B.   An order declaring that Defendant Mondelēz is financially responsible for notifying Class members of the pendency of this suit;

C.   An order declaring that Defendant Mondelēz's conduct violates the statutes referenced herein;

D.   An order awarding monetary damages, including actual damages, statutory damages, and punitive damages, in the maximum amount provided by law under the statutes named herein;

E.   An order awarding compensation for breach of warranty;

F.   An order for prejudgment interest on all amounts awarded;

G.   An order awarding Plaintiff Gollogly and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees;

H.   An order of restitution and all other forms of equitable monetary relief;

I.   Injunctive relief as the Court may deem proper; and

J.   Any further relief that the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

134.    Plaintiff Gollogly hereby demands a trial by jury.

DATED: August 16, 2024                    **RICHMAN LAW & POLICY**

_____
P. Renée Wicklund (Bar No. 6269297)
535 Mission St., 14th Floor
San Francisco, CA 94105
T: (415) 259-5688
rwicklund@richmanlawpolicy.com

*Attorney for Plaintiff and Proposed Class*