**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MEGAN WAGGENER VAN METER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONDELĒZ INTERNATIONAL, INC.,<br><br>Defendant. | Case No. 1:24-cv-7368<br><br>The Honorable Lindsay C. Jenkins |

# REPLY IN SUPPORT OF MONDELĒZ INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 923-2765
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Mondelēz International, Inc.

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Plaintiff's Generalized Allegations About the Cocoa Farming Sector Do Not Give Rise to a Plausible Claim Against MII. .......... 2

II. Plaintiff Does Not Plausibly Allege That the Labeling Is Misleading or Deceptive. .......... 4

A. The term "sustainable" is unlikely to mislead reasonable consumers. .......... 5

B. The context in which the challenged "sustainability" claims appear on the labeling clarifies that those statements reflect MII's aspirational goals. .......... 9

C. The Cocoa Life and Rainforest Alliance seals are also not misleading. .......... 11

III. Plaintiff Lacks Standing to Challenge Advertising She Did Not See or Rely On. .......... 13

IV. Plaintiff Lacks Standing to Seek Injunctive Relief. .......... 14

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ....................5

*Bakopoulos v. Mars Petcare US, Inc.*,
2021 WL 2915215 (N.D. Ill. July 12, 2021)....................13, 14

*Barbara's Sales, Inc. v. Intel Corp.*,
879 N.E.2d 910 (Ill. 2007)....................6

*Brown v. Madison Reed Inc.*,
622 F. Supp. 3d 786 (N.D. Cal. 2022) ....................6

*Bullard v. Jaguar Land Rover Auto, PLC*,
2023 WL 4845873 (D.N.J. July 28, 2023)....................7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ....................15

*Cohen v. Porsche Cars N. Am., Inc.*,
2019 WL 6700941 (C.D. Cal. Dec. 6, 2019) ....................7

*Davis v. G.N. Mortg. Corp.*,
396 F.3d 869 (7th Cir. 2005) ....................9

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022)....................3, 4

*Ehlers v. Ben & Jerry's Homemade Inc.*,
2020 WL 2218858 (D. Vt. May 7, 2020) ....................10

*Flaherty v. Clinique Labs., LLC*,
2021 WL 5299773 (N.D. Ill. Nov. 15, 2021) ....................13

*Forth v. Walgreen Co.*,
2018 WL 1235015 (N.D. Ill. Mar. 9, 2018)....................15

*Geske v. PNY Techs., Inc.*,
503 F. Supp. 3d 687 (N.D. Ill. 2020) ....................15

*Gibson v. Albertsons Cos.*,
754 F. Supp. 3d. 793 (N.D. Ill. 2024) ....................15

*GMO Free USA v. Aldi Inc.*,
2022 WL 554486 (D.C. Super. Feb. 16, 2022) .......... 8

*Gredell v. Wyeth Labs., Inc.*,
367 Ill. App. 3d 287 (2006) .......... 6

*Ham v. Hain Celestial Group, Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) .......... 6

*Herceg v. Chobani, LLC*,
2023 WL 6162939 (S.D.N.Y. Sept. 21, 2023) .......... 11, 12

*Jackson v. Kraft Heinz Foods Co.*,
2022 WL 4591749 (N.D. Ill. Aug. 3, 2022) .......... 11, 12

*Kampmann v. Procter & Gamble Co.*,
699 F. Supp. 3d 678 (C.D. Ill. 2023) .......... 5

*Krakauer v. Recreational Equip., Inc.*,
2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) .......... 7, 8

*Lee v. Canada Goose US, Inc.*,
2021 WL 2665955 (S.D.N.Y. June 29, 2021) .......... 4, 8

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 13

*Marshall v. Red Lobster Mgmt. LLC*,
2023 WL 9111611 (C.D. Cal. Dec. 18, 2023) .......... 8

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......... 5, 9

*Myers v. Starbucks Corp.*,
2020 WL 13302437 (C.D. Cal. July 29, 2020) .......... 9, 11, 12

*Myers v. Starbucks Corp.*,
536 F. Supp. 3d 657 (C.D. Cal. 2021) .......... 4, 8, 10

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
107 Cal. App. 4th 1336 (2003) .......... 6

*Padilla v. Costco Wholesale Corp.*,
2012 WL 2397012 (N.D. Ill. June 21, 2012) .......... 14

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) .......... 13, 14

*PETA v. Whole Foods Mkt. Cal., Inc.*,
2016 WL 1642577 (N.D. Cal. Apr. 26, 2016) ....................7

*Podpeskar v. Dannon Co.*,
2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) ....................3

*Rawson v. Aldi Inc.*,
2022 WL 1556395 (N.D. Ill. May 17, 2022) ....................8

*Renn v. Otay Lakes Brewery, LLC*,
2024 WL 331616 (S.D. Cal. Jan. 29, 2024) ....................15

*Rudy v. D.F. Stauffer Biscuit Co.*,
666 F. Supp. 3d 706 (N.D. Ill. 2023) ....................5

*Sanchez v. Walmart Inc.*,
733 F. Supp. 3d 653 (N.D. Ill. 2024) ....................8, 9, 12

*Simic v. City of Chicago*,
851 F.3d 734 (7th Cir. 2017) ....................14

*Sloan v. Anker Innovations Ltd.*,
711 F. Supp. 3d 946 (N.D. Ill. 2024) ....................5

*Tarzian v. Kraft Heinz Foods Co.*,
2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) ....................3

*Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*,
522 F. Supp. 3d 402 (N.D. Ill. 2021) ....................13, 14

*Vitt v. Apple Computer, Inc.*,
469 F. App'x 605 (9th Cir. 2012) ....................5, 6

*Walker v. Nestlé USA, Inc.*,
2022 WL 901553 (S.D. Cal. Mar. 28, 2022) ....................8, 12

*Whiteside v. Kimberly-Clark Corp.*,
108 F.4th 771 (9th Cir. 2024) ....................10

*Willard v. Tropicana Mfg. Co.*,
577 F. Supp. 3d 814 (N.D. Ill. 2021) ....................13, 14

**Other Authorities**

Fed. R. Civ. P. 23 ....................13

FTC, *Guides for the Use of Environmental Marketing Claims*, 75 Fed. Reg. 63552
(Oct. 15, 2010) ....................6

## INTRODUCTION

MII agrees that the "child slavery and environmental devastation that plague[] West Africa are undeniable tragedies."[1] Opp'n at 1. But that does not entitle Plaintiff to hold MII liable for these sector-wide problems under the guise of a false advertising lawsuit. While Plaintiff argues that she has tied her claims to MII's "ongoing participation in and benefit from child-slave labor and environmental destruction" (*id.* at 7), that assertion fails in light of her admission that MII procures cocoa through "intermediaries" and that it does not control farmers' labor conditions or farming practices. And while Plaintiff asserts that "no company can reasonably avoid" the use of problematic labor and farming practices (*id.* at 9), that assertion is at odds with her insistence that it *is* possible to produce cocoa without the use of the practices she criticizes. Many courts have dismissed similar product mislabeling lawsuits that seek to hold individual defendants liable based on broad allegations about sector-wide practices. This Court should do the same here.

Plaintiff's lawsuit independently fails because she has not plausibly alleged that MII's labeling is likely to mislead reasonable consumers. Her challenges to MII's "sustainability" claims are unavailing—not only because the term "sustainability" is not a concrete or objective statement of fact, but also because the labeling, viewed as a whole, makes clear that these "sustainability" claims reflect only MII's aspirational commitment to "helping" and "supporting" cocoa farmers. And Plaintiff's challenges to the Rainforest Alliance and Cocoa Life seals fare no better, as these seals simply communicate MII's creation of and participation in the Cocoa Life program and its receipt of a third-party certification by the Rainforest Alliance. Plaintiff's principal response is that these seals are misleading because they "enhance the deception" associated with the claim that

[1] Unless noted, all defined terms (*e.g.*, "MII") have the same meaning used in MII's memorandum in support of its motion to dismiss, and all citations and internal quotation marks are omitted.

the products are "100% Sustainably Sourced." Opp'n at 17. But as Plaintiff's complaint makes clear, many of MII's products (like Toblerone chocolate bars and Clif bars) use the Cocoa Life and Rainforest Alliance seals without any "sustainability" language. At a minimum, this Court should dismiss any claims challenging the Cocoa Life or Rainforest Alliance seals on their own.

Finally, leaving aside the implausibility of her claims, Plaintiff's lawsuit is woefully overbroad. Her lawsuit challenges the labeling of a massive product portfolio, even though Plaintiff only claims to have purchased two of the MII products at issue. It also seeks injunctive relief that Plaintiff—who faces no likelihood of future harm—lacks standing to seek. If the Court does not dismiss this lawsuit in its entirety, it should still dismiss any claims premised on products Plaintiff did not purchase and dismiss her claims to the extent Plaintiff seeks injunctive relief.

## ARGUMENT

### I. Plaintiff's Generalized Allegations About the Cocoa Farming Sector Do Not Give Rise to a Plausible Claim Against MII.

Plaintiff admits that she cannot "hold Mondelez liable for the general crisis of child labor in West Africa." Opp'n at 7. She nonetheless claims that her lawsuit is viable because it seeks to hold MII "liable for falsely promoting its products as 'sustainably sourced,' despite its ongoing participation in and benefit from child-slave labor and environmental destruction." *Id.* But that theory of mislabeling still rests on the premise that the cocoa in MII's products is farmed using allegedly "unsustainable" means. And that premise is implausible because it rests on general allegations about sector-wide practices, rather than specific allegations about MII's own conduct.

Indeed, Plaintiff's own allegations belie her claim that this lawsuit is targeted at MII's own conduct. She alleges that "[c]hild labor and environmental degradation in the Côte D'Ivoire" are "so widespread due, in part, to the nature of Cocoa farms." CAC ¶ 12. Her other allegations similarly focus on the role of the cocoa sector as a whole. *See id.* ¶ 14 ("The disparity in market

power between . . . disperse and small cocoa farmers and multinational chocolate corporations has led to those cocoa farmers being grossly underpaid."); *id.* ¶ 33 (alleging that "the primary source for the destruction of environmentally protected areas" is "the market created by the chocolate industry"). Those allegations concern the cocoa sector as a whole—not anything specific to MII. And courts routinely dismiss lawsuits that seek to hold defendants liable for industry-wide practices rather than practices "specific to [the defendant] or its products." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 152 (S.D.N.Y. 2022) (finding allegations about "the sheep industry and wool harvesting practices as a whole" insufficient to state a plausible claim); *see also Podpeskar v. Dannon Co.*, 2017 WL 6001845, at *2, *4 (S.D.N.Y. Dec. 3, 2017) (granting motion to dismiss where the plaintiff relied on "facts and statistics about the use of GMOs and animal husbandry practices more generally," rather than facts "about Dannon's specific practices"); *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 10, 2019) (holding that allegations about "common industry practice" did not establish that the defendant used "artificial" ingredients).

Plaintiff asserts that this case is unlike *Dwyer*, *Podpeskar*, and *Tarzian* because she has "provide[d] detailed, defendant-specific allegations tying Mondelez to the use of child-slave labor and environmental harm." Opp'n at 8. But as explained above, her allegations target the cocoa sector as a whole, rather than MII's specific conduct. If anything, her allegations are even weaker than those in *Dwyer*, *Podpeskar*, and *Tarzian*, as Plaintiff admits that MII buys cocoa through "intermediaries" whose labor and farming practices it does not control—which means that MII is at least one step removed from the alleged practices she criticizes. CAC ¶ 13. It is irrelevant that Plaintiff cites a news story involving a single child laborer who claims to have been forced to work on a farm affiliated with the Cocoa Life program. *See id.* ¶¶ 29–31; Opp'n at 7. That does not permit Plaintiff to hold MII singularly liable for what she describes as a "widespread" and

"ubiquitous" problem—particularly since she cannot plausibly allege that the two products *she* purchased contain cocoa made with specific farming or labor practices. CAC ¶¶ 12, 15.

Relying on *Lee v. Canada Goose US, Inc.*, 2021 WL 2665955 (S.D.N.Y. June 29, 2021) and *Myers v. Starbucks Corp.*, 536 F. Supp. 3d 657 (C.D. Cal. 2021) ("*Myers II*"), Plaintiff asserts that "general allegations of industry-wide abuse—coupled with claims that no company can reasonably avoid it—are sufficient to state a claim." Opp'n at 9. But unlike the plaintiffs in *Lee* and *Myers*, Plaintiff claims that MII *can* procure cocoa without using the alleged labor and environmental practices she criticizes. For example, she alleges that "there are a variety of technological innovations that have been developed to help cocoa producers eradicate child labor, forced labor and trafficking, through true transparency in their global, complex supply chains." CAC ¶ 59. And she alleges that MII, "as a multi-billion-dollar, multi-national company, could end the system of child labor if [it] wanted to." *Id.* ¶ 57. These assertions underscore just why it is implausible to assume that MII uses specific labor and environmental practices simply because other companies in the cocoa sector allegedly do so. *See Dwyer*, 598 F. Supp. 3d at 153 n.11 (distinguishing *Myers* on this basis).[2] Because Plaintiff's allegations are based on sector-wide issues rather than MII's conduct, they do not give rise to a plausible claim.

## II. Plaintiff Does Not Plausibly Allege That the Labeling Is Misleading or Deceptive.

Leaving aside her failure to plead any facts that connect MII to the sector-wide issues she describes in the complaint, Plaintiff's lawsuit also fails because she has not plausibly alleged that the labeling is likely to mislead reasonable consumers or is otherwise actionable.

[2] In any event, *Myers II* does not suggest that any of the representations Plaintiff challenges are misleading. To the contrary, the *Myers II* court specifically dismissed the plaintiff's challenges to the use of the phrases "supports sustainably sourced cocoa through Cocoa Horizons" and "traceable from the farms into our factor[ies]" and the Rainforest Alliance seal. *See Myers II*, 536 F. Supp. 3d at 664–65; *see also infra* § II.

Plaintiff concedes that all of her claims—including her claim under the CLRA, her claim under the UCL and "Other States' Consumer Protection Statutes," and her claim for unjust enrichment—hinge on whether MII's labeling is likely to mislead reasonable consumers.[3] *See* Opp'n at 10 n.6; MTD at 19–22. Although Plaintiff suggests that the reasonable consumer standard presents a "question of fact" that the Court cannot resolve at the pleading stage (Opp'n at 11), it is well settled that a court can determine that a label is "not misleading to a reasonable consumer as a matter of law." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021); *accord Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 718 (N.D. Ill. 2023). And even if a labeling claim is arguably misleading in isolation, it is not actionable if "other available information" about the product would eliminate any alleged deception. *Moore*, 4 F.4th at 882; *accord Kampmann v. Procter & Gamble Co.*, 699 F. Supp. 3d 678, 689 (C.D. Ill. 2023). Viewed through that lens, Plaintiff has not plausibly alleged that *any* aspect of the labeling—including any claims about "sustainability" and the Cocoa Life and Rainforest Alliance seals—is false or misleading.

**A. The term "sustainable" is unlikely to mislead reasonable consumers.**

"[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012); *accord Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 962 (N.D. Ill. 2024). In contrast, statements that "are not factual representations" or that "do not say anything about specific characteristics or components" of a product are not actionable. *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 556 (N.D. Cal. 2019); *see also* MTD at 12–14 (citing additional cases).

[3] While Plaintiff asserts that California substantive law governs her claims, she does not dispute that "the reasonable consumer standard governs her claims for the purposes of this motion" and that there is no material variation between the relevant California and Illinois law. Opp'n at 6.

Relying on *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014), Plaintiff asserts that she need not "plead[] an objective definition of 'sustainable'" to plausibly allege that "a reasonable consumer is likely to be misled by the term." Opp'n at 13. But that argument begs the question: if a term is not "specific and measurable," it is not "capable of being proved false" and is not actionable. *Vitt*, 469 F. App'x at 607. And because "no reasonable consumer relies on puffery," a statement without any objective or concrete definition is not capable of misleading reasonable consumers. *Brown v. Madison Reed Inc.*, 622 F. Supp. 3d 786, 801 (N.D. Cal. 2022); *accord Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007).

Here too, the term "sustainable" is not actionable because it lacks any objective, specific, or concrete meaning. As the FTC has recognized, the term "sustainable" has a "wide range of meanings." RJN Ex. 4, at 257–58; *see also* FTC, *Guides for the Use of Environmental Marketing Claims*, 75 Fed. Reg. 63552, 63583 (Oct. 15, 2010) (noting that this term "has no single environmental meaning to a significant number of consumers").[4] Plaintiff's complaint proves this point, as it cites several definitions of "sustainability" that differ from each other. *See generally* CAC ¶ 46. Plaintiff responds that even if "[t]he precise meaning might vary on the margins," these definitions nonetheless "establish a shared understanding" that "always involves basic human rights and environmental protection." Opp'n at 13–14. But the fact that "sustainability" might evoke these broad concepts does not mean that it provides any objective benchmark that would

[4] Plaintiff notes that the FTC has clarified that "[m]arketers are still responsible for substantiating consumers' reasonable understanding of these claims." Opp'n at 14 (quoting RJN Ex. 4, at 259). But even if the *FTC* could require a defendant to "substantiate" its labeling claims, it is well settled that a private plaintiff cannot. *See Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1344–46 (2003); *Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 291 (2006). And while Plaintiff describes this argument as a "red herring" (Opp'n at 10 n.5), her reliance on this language in the FTC guidance confirms that this lawsuit seeks to force MII to "substantiate" its claims about "sustainability."

allow a consumer (or this Court) to determine whether a product is or is not "sustainable." And while Plaintiff argues that "sustainability claims significantly impact purchasing behavior" (*id.* at 13), that alone does not make the term "sustainable" deceptive. Consumers would likely place great weight on knowing that a cookie or a chocolate bar is "delicious," but no one would call that an actionable misrepresentation. *See PETA v. Whole Foods Mkt. Cal., Inc.*, 2016 WL 1642577, at *3–4 (N.D. Cal. Apr. 26, 2016) (holding that "taste representations" were non-actionable puffery).

It is therefore unsurprising that courts routinely dismiss lawsuits challenging "vague statements" about "sustainability." *Bullard v. Jaguar Land Rover Auto, PLC*, 2023 WL 4845873, at *14 (D.N.J. July 28, 2023); *see also Cohen v. Porsche Cars N. Am., Inc.*, 2019 WL 6700941, at *3 (C.D. Cal. Dec. 6, 2019) (finding that representations about "quality and sustainability" were "puffery"); *Krakauer v. Recreational Equip., Inc.*, 2024 WL 1494489, at *4, *11 (W.D. Wash. Mar. 29, 2024) (holding that REI's "sustainability" and "Fair Trade Certified" representations were "nonactionable puffery"). Plaintiff argues that these cases are "inapposite" because they did not involve "sustainability claims tied to child trafficking in a supply chain." Opp'n at 15. But the plaintiff in *Krakauer* characterized REI's "sustainability" claims as "environmental representations," which Plaintiff's definition of "sustainability" includes. 2024 WL 1494489, at *11. And even if these cases did not implicate labor practices, they still underscore that the term "sustainability" lacks any objective or concrete meaning—which means it cannot be actionable.

Plaintiff then cites a litany of cases in which other district courts declined to dismiss lawsuits challenging "sustainability" claims. *See* Opp'n at 11. But these cases do not support her categorical claim that any statement about "sustainability" is sufficiently definite and objective to support a plausible claim of deception. Several of these cases actually *dismissed* some of the challenged "sustainability" claims and found that these representations were not misleading. *See*

*Myers II*, 536 F. Supp. 3d at 665 (dismissing the plaintiff's claim that Quaker misrepresented its products as "sustainably sourced"); *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 672 (N.D. Ill. 2024) (dismissing claims challenging Walmart's use of the "Blue Tick" symbol and its "back-label statement about its 'seafood sustainability commitment'"); *Lee*, 2021 WL 2665955, at *6 (finding that "all but one of the alleged misrepresentations are nonactionable"). And in several of the cases Plaintiff cites, the plaintiff allegedly construed the term "sustainable" to refer to environmental or animal welfare practices, rather than concerns about forced labor.[5] If anything, these cases underscore that the term "sustainable" does not universally convey anything about labor practices—let alone the absolutist message Plaintiff construes it to communicate.

That leaves only Plaintiff's reliance on *Walker v. Nestlé USA, Inc.*—a short, unreasoned opinion in which the court summarily found that the plaintiff had "plausibly alleged that the challenged statements were deceptive." 2022 WL 901553, at *3 (S.D. Cal. Mar. 28, 2022). No court has ever cited *Walker* to support its finding that the plaintiff plausibly alleged that a defendant's "sustainability" representations were misleading, and *Walker*'s conclusory holding is at odds with the approach of district courts that have carefully examined what the defendant's labeling does and does not promise. *See, e.g.*, *Myers II*, 536 F. Supp. 3d at 663–66; *Krakauer*, 2024 WL 1494489, at *11. That is a far more sensible approach than the one Plaintiff urges, under which a defendant's failure to eradicate *any* trace of allegedly objectionable labor or environmental practices from its supply chain would make aspirational statements about "sustainability" deceptive. This Court should reject Plaintiff's invitation to adopt that broad-brush approach.

---

[5] *See Lee*, 2021 WL 2665955; *GMO Free USA v. Aldi Inc.*, 2022 WL 554486 (D.C. Super. Feb. 16, 2022); *Marshall v. Red Lobster Mgmt. LLC*, 2023 WL 9111611 (C.D. Cal. Dec. 18, 2023); *Rawson v. Aldi Inc.*, 2022 WL 1556395 (N.D. Ill. May 17, 2022).

### B. The context in which the challenged "sustainability" claims appear on the labeling clarifies that those statements reflect MII's aspirational goals.

It is well-settled—and Plaintiff does not dispute—that an "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005); *accord Moore*, 4 F.4th at 882 (affirming dismissal of product mislabeling claim where "other available information" about the product "would quickly dissuade a reasonable consumer" from the plaintiff's interpretation of the label). Here, the packaging of OREO cookies, which is the only product that Plaintiff specifically alleges that MII labels as "sustainable," states that the Cocoa Life program "help[s] *support* sustainable cocoa sourcing" and "works together with farmers to grow cocoa in ways that *help* protect people and planet." CAC ¶ 60 (emphasis added). Those statements belie any assertion that the label includes a "categorical, present-tense promise with no qualifiers or limitations." Opp'n at 17.

Indeed, under similar circumstances, the *Myers* court dismissed the plaintiff's claims that Quaker mislabeled its Chocolate Chip Chewy Bars by stating that Quaker "[s]upports sustainably sourced cocoa through Cocoa Horizons" and that "Cocoa Horizons aims to improve the livelihood of cocoa farmers and their communities through the promotion of sustainable farming practices." *Myers v. Starbucks Corp.*, 2020 WL 13302437, at *2, *4–5 (C.D. Cal. July 29, 2020) ("*Myers I*"). As the court explained, these statements were not deceptive because they "use[d] aspirational language—'promotes,' 'aims,' and 'supports'—which acknowledge[d] [Quaker's] limited control over the supply chain." *Id.* And other courts—including in cases *Plaintiff* cites—have reached the same conclusion with respect to other "sustainability" claims. *See, e.g.*, *Sanchez*, 733 F. Supp. 3d at 673 (finding "Walmart's back-label statement about its 'sustainability commitment'" to be "corporate blather about Walmart's aspirations" that was "not actionable").

Plaintiff asserts that the challenged labeling is more akin to the one claim that the *Myers* court found to be actionable: "Made with Ethically Sourced Cocoa," which appeared on certain Starbucks products. *See* Opp'n at 16 (citing *Myers II*, 536 F. Supp. 3d at 666). But there was no indication in *Myers* that Starbucks qualified this claim with language like "supports" or "helps," which MII uses on the labeling of OREO cookies to clarify exactly what its labeling does and does not promise. *See Myers II*, 536 F. Supp. 3d at 666. The use of those terms is a dead giveaway that the labeling does not make the "categorical" promise Plaintiff claims it does.[6] Opp'n at 17.

Plaintiff's main response is that "a reasonable consumer is not required to scrutinize the fine print on the back of a label" or "visit a company's website" when "the front of the package makes an unambiguous claim." Opp'n at 15 (citing *Whiteside v. Kimberly-Clark Corp.*, 108 F.4th 771 (9th Cir. 2024)). But as explained above, "sustainability" is an amorphous concept that carries a variety of meanings—which means it is unlikely to mislead reasonable consumers, whether viewed in isolation or in connection with the remainder of the packaging. And while Plaintiff asserts that "the use of '100%' suggests . . . that the supply chain is already fully sustainable" (Opp'n at 16), this argument is circular because it *assumes* that reasonable consumers interpret the term "sustainable" as a promise that the supply chain is free of the alleged labor and environmental practices Plaintiff criticizes. Viewed as a whole, nothing about the labeling communicates the absolutist message Plaintiff claims it does.

[6] In addition to using qualifiers like "helps" and "supports," the OREO packaging also directs consumers to "visit cocoalife.org." *See* CAC ¶¶ 40, 60. That website provides extensive detail about the progress the Cocoa Life program has made while informing consumers that there are "no quick and easy solutions" to the problems Plaintiff describes. RJN Ex. 1. The information on this website—which is available to any consumer with Internet access—would dispel any possible confusion about what MII's labeling does and does not promise. *See Ehlers v. Ben & Jerry's Homemade Inc.*, 2020 WL 2218858, at *7 (D. Vt. May 7, 2020) (dismissing lawsuit challenging the use of the "Caring Dairy" seal on Ben & Jerry's products where Ben & Jerry's website provided additional detail about the Caring Dairy program); *see also* MTD at 16–17.

### C. The Cocoa Life and Rainforest Alliance seals are also not misleading.

Plaintiff's challenges to the Cocoa Life and Rainforest Alliance seals fare no better. Although Plaintiff claims that these seals do not "stand alone" (Opp'n at 18), her complaint confirms that these seals often appear in isolation from any "sustainability" language. *See* CAC ¶ 41 (Clif Bar labeling); *id.* ¶ 60 (Toblerone labeling). On their own, these seals simply reflect MII's creation of and participation in the Cocoa Life program and its receipt of a third-party certification from the Rainforest Alliance. There is nothing remotely deceptive about that.

Indeed, faced with a virtually identical claim, the *Myers* court found it was not misleading for Mars and Quaker to tout their partnership with the Cocoa Horizons and Rainforest Alliance programs, even though the defendants could not "guarantee that their cocoa suppliers did not engage in deplorable environmental and labor practices." *Myers I*, 2020 WL 13302437, at *2, *4–5. And many courts have agreed that it is not misleading for a manufacturer to highlight that a third party has certified or endorsed its product. *See Herceg v. Chobani, LLC*, 2023 WL 6162939, at *6 (S.D.N.Y. Sept. 21, 2023) (dismissing lawsuit challenging use of the "Fair Trade USA" seal); *Jackson v. Kraft Heinz Foods Co.*, 2022 WL 4591749, at *4 (N.D. Ill. Aug. 3, 2022) (dismissing lawsuit challenging use of the "REAL" dairy seal). That reasoning applies with equal force here.

Relying on the general proposition that even "literally true" statements can be misleading, Plaintiff asserts that the seals "are deceptive because they imply the products are sustainably sourced—free from practices like child-slave labor." Opp'n at 17. But there is nothing about the Cocoa Life seal (which features a small graphic of a flower and the words "COCOA LIFE") or the Rainforest Alliance seal (which features a black-and-white image of a frog) that guarantees that the products are completely free of objectionable labor or environmental practices. And it is telling that several courts faced with similar lawsuits challenging "sustainability" claims have applied this

reasoning in dismissing claims challenging similar seals. *See Myers I*, 2020 WL 13302437, at *4–5; *Sanchez*, 733 F. Supp. 3d at 662 (dismissing claims challenging the "Blue Tick" symbol).

*Walker* does not dictate a different outcome. There, the court denied Nestlé's motion to dismiss claims challenging a third-party certification by UTZ, the predecessor of the Rainforest Alliance. *See* 2022 WL 901553, at *3. In so holding, the *Walker* court credited the plaintiffs' allegation that "[t]he addition of the UTZ certification *enhances the advertising statements* by suggesting that they are true because they were approved by a third party."[7] *Id.* (emphasis added). But even if one takes that holding at face value, it does not suggest that the Cocoa Life or Rainforest Alliance seals are *independently* deceptive when they appear by themselves on the labeling.

Plaintiff similarly asserts that *Myers*, *Herceg*, and *Jackson* "are distinguishable because none involved an affirmative misrepresentation beyond the seal itself." Opp'n at 18. But this argument fails for the same reason as Plaintiff's reliance on *Walker*: it does not explain how the seals could be misleading on their own, uncoupled from the "100% Sustainably Sourced Cocoa" claim that appears on the OREO labeling. Plaintiff's reference to "Mondelez's label" (*id.*) overlooks the fact that this case challenges a dizzying array of labels, the vast majority of which do not include the language "sustainable" or made with "100% Sustainably Sourced Cocoa." At a minimum, this Court should dismiss Plaintiff's claims to the extent they challenge the use of the Cocoa Life or Rainforest Alliance seals without any accompanying "sustainability" language.

---

[7] Notably, this one sentence reflects the entirety of the *Walker* court's reasoning. The *Walker* court did not cite a single case supporting this conclusion, and it did not distinguish (or even acknowledge) the contrary holding in *Myers* and other cases dismissing similar challenges to third-party certifications. The language Plaintiff cites from *Walker* is neither binding nor persuasive.

## III. Plaintiff Lacks Standing to Challenge Advertising She Did Not See or Rely On.

A plaintiff "cannot predicate standing on injury which [she] does not share." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). In a product mislabeling case, a plaintiff's alleged injury arises from purchasing a product in reliance on an allegedly false or misleading statement. *See* MTD at 23. It necessarily follows—as Plaintiff concedes—that a plaintiff "does not have Article III standing to bring claims based on products she never bought." Opp'n at 19.

Plaintiff nonetheless asserts that "[t]he relevant question is not whether Plaintiff can personally sue over unpurchased products, but whether she can adequately represent absent class members who did." *Id.* But "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). For that reason, many federal courts in the Seventh Circuit have "concluded that a named plaintiff cannot maintain claims either for herself *or on behalf of a class* for products that she did not purchase." *Flaherty v. Clinique Labs., LLC*, 2021 WL 5299773, at *4 (N.D. Ill. Nov. 15, 2021) (emphasis added); *see also, e.g.*, *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) (similar); *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 824–25 (N.D. Ill. 2021) (collecting cases). Here too, Plaintiff allegedly purchased only two products: Toblerone chocolate bars and Gluten-Free OREO cookies. She did not suffer any injury as a result of any other product's labeling.

While Plaintiff acknowledges that many courts in this District have found that "plaintiffs lack standing to challenge unpurchased products" (Opp'n at 19), she urges this Court to follow *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402 (N.D. Ill. 2021), which purportedly "hold[s] that the ability to assert claims relating to unpurchased products is not a standing question at all, but rather a matter for class certification under Rule 23." Opp'n at 19. But the question of whether "plaintiffs may be adequate class representatives for absent class

members injured by similar products is a different question than the issue here." *Bakopoulos*, 2021 WL 2915215, at *3. "At this stage. . . there is no class and plaintiffs cannot bypass the 'irreducible constitutional minimum' of Article III standing for their individual claims." *Id.*; *see also Willard*, 577 F. Supp. 3d at 824–25 (adopting this reasoning and declining to follow *Texas Hill Country*).

Here too, Plaintiff is an individual consumer who did not purchase the overwhelming majority of the products whose labeling she challenges. Indeed, she admits that she lacks standing to assert claims on her own behalf based on the labels of products she did not purchase. *See* Opp'n at 19. That is the end of the inquiry. Allowing Plaintiff to assert claims on behalf of *other class members* who purchased *other* products would violate the bedrock principle that standing "cannot be acquired through the back door of a class action."[8] *Payton*, 308 F.3d at 682; *see also Padilla v. Costco Wholesale Corp.*, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012) (holding that a plaintiff "cannot use the class-action device to 'predicate standing on injury which he does not share'" by challenging the labeling of a product he "never purchased"). That result would contravene Article III, and this Court should dismiss any claims premised on products Plaintiff never purchased.

## IV. Plaintiff Lacks Standing to Seek Injunctive Relief.

Finally, leaving aside her failure to state a plausible claim, Plaintiff lacks standing to seek injunctive relief because she cannot plausibly allege "a real and immediate threat of *future* injury." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (emphasis added). Plaintiff is now aware that the cocoa in MII's products does not satisfy her subjective definition of "sustainable" cocoa. And it is well-settled that "consumer plaintiffs cannot seek injunctive relief once they are

[8] Plaintiff asserts that *Payton* stands for the proposition that "class differences warrant denial of class certification, not dismissal." Opp'n at 20. But *Payton* held that the claims of class members whose injuries the named plaintiffs did not share could go forward only "as an individual suit." 308 F.3d at 677. So too here: even if putative class members can assert their *own* claims based on products Plaintiff never purchased, Plaintiff lacks standing to assert those claims on their behalf.

aware of a deceptive practice." *Forth v. Walgreen Co.*, 2018 WL 1235015, at *14 (N.D. Ill. Mar. 9, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014)); *see Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 703 (N.D. Ill. 2020) ("Plaintiffs . . . who allege that they were deceived in the past—but have not alleged any likelihood of being deceived in the future—do not have standing to seek an injunction."); MTD at 24–25 (collecting additional cases).

Relying primarily on *Gibson v. Albertsons Cos.,* 754 F. Supp. 3d. 793 (N.D. Ill. 2024), Plaintiff asserts that she faces "ongoing harm" because she "would like to continue purchasing Mondelez's products in the future" but "can no longer rely on the accuracy of its representations." Opp'n at 21–22. But in light of Plaintiff's allegation that the use of "unsustainable" labor and environmental practices is so widespread and ubiquitous as to be unavoidable, she faces no "actual and imminent" threat of future harm based on the possibility that the cocoa in MII's products might one day satisfy her standard of "sustainability." *Id.*

Moreover, Plaintiff does not allege that she intends to buy the products as they are currently manufactured. *See* CAC ¶ 62 (alleging that Plaintiff would "not have bought" the products "had she known . . . that the products were not sourced from sustainable farming practices"). Even if an injunction might require MII to change the products' *labeling*, that injunction would not force MII to use cocoa that Plaintiff regards as "sustainable." And because Plaintiff cannot plausibly allege that she would purchase the products in the future even if MII no longer labeled them as "sustainable," she lacks standing to seek injunctive relief. *See, e.g.*, *Renn v. Otay Lakes Brewery, LLC*, 2024 WL 331616, at *8 (S.D. Cal. Jan. 29, 2024) (holding that the plaintiff lacked standing to seek injunctive relief because his allegations suggested he "will not likely purchase the Products" in the future "even if the health and wellness representations were removed").

## CONCLUSION

The Court should dismiss this lawsuit with prejudice and without further leave to amend.

Dated: August 28, 2025

Respectfully submitted,

By: /s/ Dean N. Panos

Dean N. Panos (ARDC No. 6203600)
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2765
Facsimile: (312) 527-0484
dpanos@jenner.com

Alexander M. Smith
Jenner & Block LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-2262
Facsimile: (213) 239-5199
asmith@jenner.com

Attorneys for Defendant
Mondelēz International, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed on August 28, 2025 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated: August 28, 2025

By: /s/ Dean N. Panos
Dean N. Panos