**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Megan Waggener Van Meter, | |
| *Plaintiff,* | Case No. 24-cv-7368 |
| v. | Judge Lindsay C. Jenkins |
| Mondelēz International, Inc., | |
| *Defendant.* | |
| | |
| Jeremiah Pearson, | |
| *Plaintiff,* | Case No. 25-cv-10819 |
| v. | Judge Lindsay C. Jenkins |
| Mondelēz International, Inc., | |
| *Defendant.* | |

**MEMORANDUM OPINION AND ORDER**

Mondelēz International, Inc. promotes the sustainability of many of its snack and chocolate brands, including Oreo, which it claims has "100% Sustainably Sourced Cocoa." Megan Waggener Van Meter purchased Mondelēz products and now alleges that these claims are inconsistent with labor and environmental abuses in the cocoa supply chain. After she raised putative class action claims for deceptive practices and unjust enrichment, Mondelēz moved to dismiss. It also moved to consolidate the case with *Pearson v. Mondelēz Global LLC*, No. 1:25-cv-10819, which challenges Oreo's labeling under a distinct theory of deception.

Because consolidation would prejudice the *Pearson* plaintiff, the motion to consolidate is denied. The motion to dismiss is denied in part and granted in part. Waggener Van Meter lacks standing to pursue claims for unpurchased products and for injunctive relief, but has otherwise alleged a plausible misrepresentation.

1

## I.      Background[1]

Mondelēz is an Illinois corporation, boasting a portfolio of snack and chocolate brands that are well known. They include Oreo, Clif Bar, and Toblerone. [Dkt.  52 ¶¶ 1, 11.] In 2012, it launched Cocoa Life, a global cocoa sustainability program committed to "help[ing] make cocoa sourcing more sustainable in key cocoa-producing countries." [*Id.* ¶ 18; Dkt. 58-1 at 3.[2]]

Consistent with this mission, Mondelēz markets many of its products as "sustainable." [Dkt. 52 ¶ 40.] For example, Clif Bar boxes promote a "Rainforest Certification." [*Id.* ¶ 42.] Oreo and Toblerone packaging features the Cocoa Life seal, and Oreo further emphasizes its "100% Sustainably Sourced Cocoa" alongside claims that it "help[s] support sustainable cocoa sourcing" and that "Cocoa Life works together with farmers to grow cocoa in ways that help protect people & planet." [*Id.* ¶¶ 60, 40.]





---

[1]      The court accepts as true plaintiff's well-pleaded allegations and draws all reasonable inferences in her favor. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023).

[2]      Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

Plaintiff Megan Waggener Van Meter, a California resident, relied on these representations in regularly purchasing Gluten Free Oreos and Toblerone (among other unnamed products) for four-plus years. [*Id.* ¶¶ 9, 60–61.] She claims, however, that she never would have bought them "had she known the truth; namely, that the products were not sourced from sustainable farming practices but rather off the backs of child and slave labor." [*Id.* ¶ 62.]

This allegation—that Mondelēz benefits from child and slave labor—draws primarily on government and industry reports detailing the systemic "plague of child labor in the cocoa supply chain." [*See id.* ¶¶ 12–17; 23–28.] However, she also highlights a 2022 documentary, which "demonstrated ongoing child slavery on Mondelēz's plantations," and a 2023 lawsuit against Mondelēz, where the plaintiff claimed that "she was forced to work on a Mondelēz plantation from ages 10-19 … performing hazardous work in violation of the ILO Convention No. 182." [*Id.* ¶¶ 29–30.]

Waggener Van Meter further alleges that Mondelēz's production and purchasing activities "do not follow any sustainable environmental protocols," have contributed to mass deforestation, and have devastated biodiversity, wildlife, and ecosystems. [*Id.* ¶ 32–33, 35–36.]

Citing studies that show "[c]onsumers are willing to pay a premium for 'sustainable' and ethically sourced products," *see id.* ¶ 37–39, she now raises claims for deceptive practices and unjust enrichment on behalf of herself and a putative class of Mondelēz customers.

## II. Analysis

### A. Motion to Consolidate

Mondelēz has moved to consolidate this case with *Pearson v. Mondelēz Global LLC*, No. 1:25-cv-10819, a related case previously reassigned to the court's docket. Because consolidation would prejudice the *Pearson* plaintiff, the court denies Mondelēz's motion.

#### 1. Background on *Pearson v. Mondelēz*

Jeremiah Pearson, a California resident, purchased Oreo products in or around December 2024. [*Pearson* Dkt. 1 ¶ 9.[3]] He, too, "saw and relied upon the '100% Sustainably Sourced Cocoa' representation and the 'Cocoa Life' logo prominently displayed on the Products' packaging." [*Id.*]

---

[3] Citations to docket entries in *Pearson v. Mondelēz Global LLC* are distinguished accordingly.

Pearson "understood this as a promise about the Products' composition and verifiable origin—that all cocoa inside the package came from Cocoa Life sourced cocoa." [*Id.* ¶ 40.] But, on the Cocoa Life website, Mondelēz acknowledges that "beans from Cocoa Life registered farms are mixed with other beans." [*Id.* ¶ 21.] Its accounting method, called "mass balance," allows mixing with non-certified beans, so that Mondelēz "do[es] not know exactly how much Cocoa Life cocoa is in each individual product[.]"[4] [*Id.* ¶¶ 20, 23.] Pearson therefore alleges that the "100% Sustainably Sourced Cocoa" representation is misleading, since it fails to disclose "its use of mass balance and the resulting compositional uncertainty and lack of traceability." [*Id.* ¶ 29.]

Pearson filed a putative class action lawsuit in the Eastern District of California, raising claims for consumer protection violations and unjust enrichment—as well as common law breach of warranty and misrepresentation.[5] Judge William B. Shubb transferred the action to the Northern District of Illinois, finding the issues "substantially similar" to those in the first-filed *Waggener* case. [*Pearson* Dkt. 16.] This court granted an unopposed motion to relate the two cases and now considers the contested question of consolidation. [Dkt. 73.]

## 2. Legal Standard

"District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018). Federal Rule of Civil Procedure 42(a) permits courts to consolidate cases that "involve a common question of law or fact," Fed. R. Civ. P. 42(a), and was "designed and intended to encourage such consolidation where possible." *United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945), aff'd, 328 U.S. 654 (1946). Consolidation is appropriate "where there is a risk of inconsistent rulings," and where it "promote[s] judicial efficiency," so long as it does not unduly prejudice any party. *Tuccori v. At World Props.*, 2025 WL 2976481, at *1 (N.D. Ill. Oct. 22, 2025); *see Anderson v. Raoul*, 2023 WL 4549514, at *1 (S.D. Ill. June 1, 2023).

## 3. Propriety of Consolidation

There is no question that the same representation—that Oreos contain "100% Sustainably Sourced Cocoa"—underlies *Pearson* and is central to *Waggener*. Mondelēz argues that consolidation is therefore proper because "the two cases assert [statutory consumer fraud] claims on behalf of the same class members based on the same labeling statements on the same products." [Dkt. 69 ¶ 9.] Otherwise, it risks

---

[4]     This statement has since been removed from the Cocoa Life website. [*Pearson* Dkt. 1 ¶ 24.]

[5]     He filed suit against Mondelēz Global LLC, a subsidiary of Mondelēz International Inc. The parties treat the two entities as identical.

having to "engage in duplicative discovery and motion practice with two different sets of counsel." [*Pearson* Dkt. 25 at 7.]

Pearson, however, emphasizes that each plaintiff posits a different theory of deception. Waggener Van Meter challenges the representation as inconsistent with Cocoa Life's labor and environmental abuses, while Pearson challenges it as inconsistent with mass balance accounting, *i.e.*, mixing Cocoa Life's beans with non-certified beans. [*Pearson* Dkt. 22 at 2–3.] Put differently, one plaintiff disputes Cocoa Life's sustainability, and the other objects to there *not being enough* Cocoa Life cocoa in the final product. Pearson thus argues (1) that the cases have distinct questions, rendering consolidation impracticable under Rule 42; and (2) that it would "create a prejudicial conflict by combining two factually distinct theories of deception into a single case." [*Id.* at 6, 12.]

True, the cases involve distinct theories and "rest on different factual foundations." [*Id.* at 10.] But this does not preclude consolidation. "Rule 42 requires only '*a* common issue of law or fact,' and [the corresponding] Local Rule 40.4 requires only '*some* of the same issues of fact or law' (not *all* the same)." *Brunner v. Jimmy John's, LLC*, 2016 WL 7232560, at *2 (N.D. Ill. Jan. 14, 2016) (emphasis in original). *See also Laboratories v. Teva Pharms. USA, Inc.*, 2008 WL 11399700, at *3 (N.D. Ill. Nov. 12, 2008) ("actions do not have be identical, nor must common issues predominate"). Distinctions may weigh on the court's exercise of discretion, but they do not make consolidation impossible when there exists "*at least one* common question of law or fact." *Brown v. Friedal*, 2019 WL 913591, at *1 (E.D. Wis. Feb. 25, 2019) (emphasis added).

Pearson presses a more exacting standard—one that involves *sets* of facts, *principal* questions, and issues that drive resolution. [*Pearson* Dkt. 22 at 8–9.] But the bar is lower and, here, comfortably met. As Judge Shubb observed, "these actions focus on the same language, written on the same label, invoking the same subject matter, and promoting the same product." [*Pearson* Dkt. 16 at 9.] Each plaintiff's interpretation is its own question of fact, and one that does not prevent this court from considering the merits of consolidation.

However, considering those merits, the court finds Pearson's protests persuasive. He identifies five grounds for prejudice should the actions be consolidated: (1) the expanded scope of litigation; (2) jeopardy to class certification; (3) distinct models for damages (and their effect on certification); (4) inconsistent and insufficient remedies; and (5) the likelihood that Interim Class Counsel jettisons his core claims. [*Pearson* Dkt. 22 at 12–15.] The second and fifth grounds, and their presumptive interplay, guide the court's decision.

Both Pearson and Mondelēz recognize the "difficulty of certifying a class" when "consumers do not interpret [deceptive claims] in a uniform manner," as is true here.

[*Pearson* Dkt. 25 at 17 (citing *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008)); *see Pearson* Dkt. 22 at 12–13.] In *Thorogood,* also a false advertising case, the Seventh Circuit held that certification is improper when "there [does] not appear to be a single understanding of the significance of labeling or advertising of the allegedly deceptive statements." *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) (citing *Thorogood,* 547 F.3d at 748). Indeed, typicality is undermined when, "*among just Plaintiffs*, there is a difference as to what each Plaintiff understood at any given time." *Groussman v. Motorola, Inc.*, 2011 WL 5554030, at *5 (N.D. Ill. Nov. 15, 2011) (emphasis added).

Mondelēz frames these as arguments against certification, not consolidation. [*Pearson* Dkt. 25 at 17.] To Pearson, it's a distinction without difference—and the court agrees. [*Pearson* Dkt. 22 at 13 n.5 ("consolidation order that creates a fatal, internal conflict within a putative class is the very definition of unfair prejudice").] Certification remains a question for another day, but for now, it seems clear that all parties believe it untenable to pursue two theories of deception in one class action.[6] Interim Class Counsel is therefore likely, if not certain, to abandon one.[7]

In a similar set of circumstances, the Eighth Circuit held that a district court erred when, upon consolidating multiple cases, it appointed a lead plaintiff clearly unwilling to "pursue the derivative claims." *Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*, 580 F.3d 755, 768–69 (8th Cir. 2009). In doing so, it emphasized that constituent cases retain their independent status, and "plaintiffs in a consolidated action ... are still entitled to a decision on the merits of their claims." *Id.* (internal quotations and citation omitted). *See also Hall*, 584 U.S. at 67 (reiterating that consolidation does not "completely merg[e] the constituent cases into one, but instead ... enable[s] more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties"). Here, with Interim Class Counsel already appointed and disincentivized from pursuing Pearson's case, consolidation risks the same, impermissible result.

Prejudice thus "outweighs the value of increased efficiency." *Tuccori*, 2025 WL 2976481, at *1. Given the complaints' distinct, underlying theories of deception, discovery and motion practice are unlikely to be entirely duplicative across the related cases. And to the extent there is overlapping discovery, the court expects the parties—across the related cases—to work cooperatively to prevent redundancy. *See,*

---

[6]    The theories are not only distinct but seemingly in conflict insofar as they purport to explain mass consumer motivations. For example, Pearson emphasizes his indifference with "the integrity of the Cocoa Life program," despite the *Waggener* complaint's insistence that "[c]onsumers care deeply about the human cost behind the products they buy, and the labor practices present in the supply chain." [*Pearson* Dkt. 22 at 8; Dkt. 52 ¶ 37.]

[7]    Interim Class Counsel previously abandoned a different consolidated plaintiff's derivative claims, including one for breach of warranty. [*See* Dkt. 1 at 27.] At minimum, then, it appears certain that Pearson's own warranty claims would fall by the wayside.

*e.g.*, *Brooks v. FedEx Supply Chain, Inc.*, 2020 WL 4201159, at *2 (S.D. Ill. July 22, 2020); *Little v. TMI Hosp. Inc.*, 2016 WL 9686075, at *2 (C.D. Ill. Feb. 4, 2016).

The motion for consolidation, however, is denied.

## B.     Motion to Dismiss

Mondelēz has also moved to dismiss *Waggener*. Pursuant to Federal Rule of Civil Procedure 12(b)(1), it challenges Waggener Van Meter's lack of standing to sue for unpurchased products and pursue injunctive relief. It also argues that, under Rule 12(b)(6), her failure to allege an actionable or deceptive misrepresentation is fatal to all claims. The court agrees that she lacks standing on these bases but concludes that she alleged a plausible misrepresentation.

### 1.     Legal Standards

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the court takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023).

To establish standing, "the plaintiff must have suffered an injury in fact traceable to the defendant and capable of being redressed through a favorable judicial ruling." *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The alleged injury must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). And when the plaintiff pursues prospective injunctive relief, the threat of *future injury* must be "real and immediate," not "conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint's factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the court takes well-pleaded factual allegations as true, conclusory allegations are insufficient to avoid dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2.     Article III Standing

Because Article III standing is a necessary component of federal jurisdiction, the court addresses it first. *See Kithongo v. Garland*, 33 F.4th 451, 454 (7th Cir. 2022). Mondelēz challenges two elements of Waggener Van Mater's complaint for lack

of standing: claims involving products she did not purchase, and claims for injunctive relief.

### a. Standing to Sue for Unpurchased Products

Waggener Van Meter purports to represent "[a]ll United States residents who purchased Mondelēz Products marked" as sustainable. [Dkt. 52 ¶ 63.] But Mondelēz maintains that standing principles bar her "from challenging the labeling of any products other than Gluten-Free OREO cookies and Toblerone chocolate bars"—the only two products she purchased. [Dkt. 57 at 29.]

Courts in this district take one of three approaches to this issue. Some "categorically hold that class action plaintiffs never have standing with respect to products they have not purchased." *Gibson v. Albertsons Companies, Inc.*, 754 F. Supp. 3d 793, 803 (N.D. Ill. 2024). *See also Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021). Others permit plaintiffs to move forward when "the products and alleged misrepresentations about a purchased product are substantially similar." *Wagner v. Gen. Nutrition Corp.*, 2017 WL 3070772, at *5 (N.D. Ill. July 19, 2017) (quoting 1 McLaughlin on Class Actions § 4.28 (13th ed. 2016)). *See also Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017). Finally, some "distinguish[] between Article III standing and class-certification requirements," deferring resolution until certification. *Daly v. FitLife Brands, Inc.*, 2023 WL 6388112, at *6 (N.D. Ill. Sept. 29, 2023). *See also Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402 (N.D. Ill. 2021). There is no controlling authority, and the Supreme Court has observed a tension in its own caselaw as to whether similar questions are "appropriately addressed under the rubric of standing or adequacy." *Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003).

Waggener Van Meter acknowledges the split but asks this court to follow the third approach. [Dkt. 64 at 24–25.] This court, however, has already endorsed the first. *See Raya v. Mead Johnson Nutrition Co.*, 758 F. Supp. 3d 819, 829 (N.D. Ill. 2024). As it explained in *Raya*, plaintiffs have "the burden of establishing standing throughout the case 'with the manner and degree of evidence required at the successive stages of litigation.'" *Id.* (quoting *Lujan*, 504 U.S at 561). At this stage, "there is no class and plaintiff cannot bypass the 'irreducible constitutional minimum' of Article III standing for her individual claim." *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 665 (N.D. Ill. 2024) (quoting *Lujan*, 504 U.S. at 560).

In urging this court to defer until certification, Waggener Van Meter poses the following hypothetical:

[S]uppose Alex purchased several packages of gluten-free Oreos, just like Plaintiff. Plaintiff does not have standing to bring Alex's individual claim, even though they purchased the same product with the same misrepresentation. If she did, Rule 23 would be unnecessary. The correct inquiry, therefore, is not

> whether Plaintiff has standing to challenge unpurchased products (she does
> not), but whether she may represent absent purchasers under Rule 23.

[Dkt. 64 at 25.] In the court's view, this makes the wrong point. Eventually, the court may permit her to represent absent purchasers, but she must still possess standing at *this* stage of the litigation. She acknowledges that she does not, and she can't sidestep that hurdle by "acquir[ing it] through the back door of a class action." *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (quoting *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., dissenting)). In other words, the questions must be addressed in turn, at the appropriate times.

But there's a wrinkle. Mondelēz argues that, consistent with this approach, Waggener Van Meter may challenge only the labeling of Gluten-Free Oreos and Toblerone. [Dkt. 57 at 29.] Yet, in seeking to consolidate the case with *Pearson*, it argued that "the two cases are factually similar because they challenge the use of the same labeling statement on the *same product*." [*Pearson* Dkt. 25 at 16 (emphasis added).] Pearson, though, purchased Double Stuf and Mini Oreos, not Gluten-Free Oreos. [*Pearson* Dkt. 1 ¶ 9.] This was irrelevant to both Mondelēz and Judge Shubb, who stated that "these actions focus on the same language, … promoting the same product." [*Pearson* Dkt. 16 at 8.] Indeed, this was the factual predicate for Judge Shubb's conclusion that the cases were substantially similar, which—as Mondelēz emphasized in seeking consolidation, and as the court credited in reaching the merits of consolidation—is the law of the case. [*See Pearson* Dkt. 25 at 11 (citing *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010) ("law-of-the-case principles are applicable when a case is transferred to a new judge midway through litigation" and "the successor judge is discouraged from reconsidering the decisions of the transferor judge")).] Given Mondelēz's own position, and so as not to disrupt the basis for Judge Shubb's conclusion, this court is inclined to treat Oreos, rather than a specific variety, as the operative "product."

Therefore, Waggener Van Meter's claims for products she did not purchase— *i.e.*, all except Oreos and Toblerone—are dismissed without prejudice for lack of standing.

### b.      Standing to Pursue Injunctive Relief

Waggener Van Meter claims that she "would like to buy Defendant's products in the future if and when they [are] produced as advertised by Mondelēz." [Dkt. 52 ¶10.] However, because she "can no longer rely on the accuracy of the representations" and "cannot readily determine whether the misrepresentations have been corrected," she seeks injunctive relief. [*Id.* ¶ 10, 5.] Here, too, Mondelēz argues that she lacks standing.

"The general rule is that consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice." *Forth v. Walgreen Co.*, 2018 WL 1235015, at

*14 (N.D. Ill. Mar. 9, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014)). In *Camasta*, for example, the Seventh Circuit held that a plaintiff duped by a deceptive price reduction lacked standing to pursue injunctive relief, since he was subsequently aware of the sales practice and unlikely to be harmed again. *Camasta*, 761 F.3d at 740–41.

Waggener Van Meter acknowledges this general rule but challenges its applicability. She instead cites *Gibson*, 754 F. Supp. 3d 793, arguing that it excludes from *Camasta*'s ambit "a consumer [who] wishes to purchase the product again but cannot rely on the truth of the labeling." [Dkt. 64 at 26 (also citing *Marshall v. Red Lobster Mgmt. LLC*, 2023 WL 9111611, at *2 (C.D. Cal. Dec. 18, 2023), where plaintiff wished to continue purchasing sustainable lobster but lacked ability to verify the truth of 'sustainability' representations).]

Others, including this court, have approached this theory with greater skepticism. *See Raya,* 758 F. Supp. 3d at 828–829 (dismissing for lack of standing when plaintiff "would only purchase the formula again if she could be certain that it did not contain … heavy metals"); *Bakopoulos*, 2021 WL 2915215, at *3 (holding that plaintiffs who would "be willing" to buy conforming products "allege[d] only conjectural future injuries"); *Daly*, 2023 WL 6388112, at *4–5 (observing that plaintiff's "interest in later buying" conforming product was inconsistent with "Seventh Circuit's approach, which demands that the plaintiff establish, beyond mere conjecture, the likelihood that future injury will result without an injunction.")

As in *Gibson*, this court has "no reason to doubt the truth of [Waggener Van Meter's] allegation that she would purchase the [cocoa] product[s] again were it not for her ongoing inability to rely on [Mondelēz's] claims." 754 F. Supp. 3d at 805. But that does not suffice to transform a hypothetical injury into one that is actual or imminent. Regardless of whether she would like to buy Oreos or Toblerone in the future, her willingness to do so depends entirely on Mondelēz fundamentally changing its farming practices. Not only is this beyond her control, but its likelihood is at odds with allegations that "[n]ot a single company or government is anywhere near reaching the sector-wide objective of the elimination of child labour." [Dkt. 52 ¶ 15.] Meanwhile, she "now knows how [Mondelēz] interprets" its labels, "so [s]he will not be fooled again." *Daly*, 2023 WL 6388112, at *4. Any injury is paradigmatically speculative.

Having failed to show the requisite injury-in-fact, Waggener Van Meter lacks standing to pursue injunctive relief.

### 3.    Failure to State a Claim

Waggener Van Meter alleges that Mondelēz's deceptive practices violate the California Consumers Legal Remedies Act (CLRA). She also raises derivative claims under California's Unfair Competition Law (UCL) and other states' consumer

protection statutes, and for unjust enrichment. Because she has articulated a plausible theory of deception, the claims survive.

###     a.     California     Consumers     Legal     Remedies     Act Violations

Waggener Van Meter alleges that Mondelēz violated the CLRA by falsely representing that its products "have sustainable qualities and were independently verified as having been produced using environmentally sound and socially responsible practices." [Dkt. 52 ¶ 80.] Specifically, she alleges that use of the Cocoa Life seal on Oreo and Toblerone packaging, as well as Oreo's front- and back-label "sustainability" claims, is inconsistent with labor and environmental abuses in the supply chain. [*Id.* ¶¶ 60, 62.]

This, she says, violates the following CLRA prohibitions:

(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services. …
(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have. …
(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. …
(9) Advertising goods or services with intent not to sell them as advertised.

California Civil Code § 1770(a). An "objective 'reasonable consumer' standard" guides the court's analysis. *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 868 (9th Cir. 2025) (citation omitted).

Mondelēz's motion to dismiss raises two threshold challenges, arguing first that broad, industry-wide allegations are not actionable against Mondelēz, and second that seals and certifications affixed in isolation are not deceptive.[8] [Dkt. 57 at 13, 23.] It then argues that references to "sustainability" are either too subjective to be actionable or too aspirational to be misleading. [*Id.* at 18, 20.]

<u>Industry-Wide Allegations</u>

Mondelēz is correct that Waggener Van Meter cannot rely solely on sector-wide allegations without "draw[ing] a connection between the common industry practice

---

[8]     Waggener Van Meter takes issue with Mondelēz's use of the 'Rainforest Alliance' seal on Clif Bars, which she did not purchase. The court limits its analysis to alleged misrepresentations on products that she did purchase.

and the actual practice used by [the company]." *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019).

But she doesn't. She identifies both an exposé and lawsuit detailing the use of "child-slave labor" on Mondelēz plantations, as well as research finding that "[n]ot a single company" is anywhere near eliminating child labor. [Dkt. 52 ¶¶ 28–31.] So, too, does she allege that "Mondelēz is involved in deforesting Indigenous communities through industrial logging," citing a press release referencing protests against the company for forest destruction, human rights violations, and climate inaction. [*Id.* ¶ 35.] Yet another report observes that "national parks and conservation lands have been cleared of their forest to make way for cocoa operations to feed demand from large chocolate companies"—including Cadbury, which Mondelēz owns. [*Id.* ¶ 33.]

These allegations distinguish Waggener Van Meter's case from those cited by Mondelēz. *See Tarzian*, 2019 WL 5064732, at *4 ("Plaintiffs' allegations detail the practices commonly used to manufacture citric acid throughout the industry before concluding: 'Thus, Defendant's citric acid is artificial.' That is too great of an inferential leap."); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 152 (S.D.N.Y. 2022) ("underlying evidence on which Plaintiff relies … does not describe any animal cruelty specific to Defendant"); *Podpeskar v. Dannon Co., Inc.*, 2017 WL 6001845, at *4 (S.D.N.Y. Dec. 3, 2017) ("nub of plaintiff's claim is simply that yogurt is made from milk … from cows … who are subjected to certain animal husbandry practices"); *Gordon v. Target Corp.*, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) ("none of [the cited articles] is specific to Defendant or the Product").

To be sure, the complaint is replete with concerns about the industry at large. But there are sufficient Mondelēz-specific allegations to survive a motion to dismiss.[9]

<u>Seals and Certifications</u>

Mondelēz also correctly observes that the Cocoa Life seal, in isolation, "say[s] nothing about sustainability, labor practices, or environmental practices" and reflects only its "participation in the Cocoa Life program." [Dkt. 57 at 24.] Seals—which communicate only (and truthfully) that a corporation sources its cocoa from the issuer's farms—are not misleading absent a "specific, affirmative misrepresentation," nor do they establish any affirmative duties of disclosure. *Myers v. Starbucks Corp.*,

---

[9]     Mondelēz makes two derivative arguments—that Waggener Van Meter implausibly asserts that Mondelēz could single-handedly end child labor, and that she alleges that it cannot substantiate its claims. [Dkt. 52 at 15–16.] Neither is relevant. As Mondelēz elsewhere asserts, this is a lawsuit about consumer deception, not child labor and environmental degradation. [*Id.* at 7.] And having raised Mondelēz-specific concerns, Waggener Van Meter need not rely on the company's ability—or lack thereof—to substantiate its claims.

2020 WL 13302437, at *5 (C.D. Cal. July 29, 2020) ("*Myers I*") (citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018)).

Waggener Van Meter does not meaningfully contest this. She suggests that the seal is deceptive because it "impl[ies] the products are sustainably sourced—free from practices like child-slave labor" but does not "ensure[] freedom from such labor." [Dkt. 64 at 23.] But the Cocoa Life seal itself says nothing about sustainability; it features only a name and conceptual logo. It makes no affirmative statement, nor does it have to.

She more persuasively argues that, in context, the seal "enhance[s] the deception." [*Id.* at 22.] For this, she highlights the accompanying "100% Sustainably Sourced" language on Oreo packaging, thereby distinguishing *Myers I* and related cases, "none [of which] involved an affirmative misrepresentation beyond the seal itself." [*Id.* at 22–23.] True, but this fails to show how the seal *itself* is deceptive. Oreo's accompanying language warrants scrutiny, but it is irrelevant to the court's analysis of Toblerone, where the label appears in isolation.

Perhaps the most compelling argument, which she hints at but fails to develop fully, is that Mondelēz's use of the Cocoa Life seal implies third-party certification, despite Cocoa Life being a Mondelēz initiative. [*See* Dkt. 52 ¶ 80 (alleging that the products misrepresent being "independently verified as having been produced using environmentally sound and socially responsible practices").] It is plausible that a "reasonable consumer would interpret the [] label as being from a third party," even when it makes "no mention of a third party." *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *2 (N.D. Cal. Jan. 6, 2010) (discussing the seal for Greenlist, an initiative of Defendant's, which featured environmental imagery alongside language about environmental responsibility).

But Waggener Van Meter runs into the same problem: the seal, in isolation, says nothing about sustainability. It might imply independent verification—but independent verification *as to what* is unclear. This distinguishes her situation from that in *Koh*, as well as, say, *Walker v. Nestlé USA, Inc.*, where genuine third-party certification "enhance[d] the advertising statements by suggesting they are true because they were approved by a third party." 2022 WL 901553, at *3 (S.D. Cal. Mar. 28, 2022). There's nothing here to enhance or verify, and so any misunderstanding about Cocoa Life's affiliation is irrelevant to her theory of deception.

Of course, this is true only when the Cocoa Life seal appears in isolation. It is therefore insufficient to warrant full dismissal, since Oreo's packaging features accompanying text. But because the same cannot be said about Toblerone, it necessarily narrows her claims.

Subjective and Aspirational Language

Oreo promotes the Cocoa Life seal alongside front-label claims of "100% Sustainably Sourced Cocoa," and back-label claims that "[t]hrough our partnership with Cocoa Life, we help support sustainable cocoa sourcing" and that "Cocoa Life works together with farmers to grow cocoa in ways that help protect people & planet." [Dkt. 52 ¶ 40.] Mondelēz argues that these are subjective and aspirational, and therefore neither actionable nor deceptive. [Dkt. 57 at 18, 20.]

Representations "that amount to 'mere puffery' are not actionable because no reasonable consumer relies on puffery. Factual representations, however, are actionable." *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 801 (N.D. Cal. 2022), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023). *See also Brown*, 2023 WL 8613496 at *2 ("statements that are 'quantifiable' or refer to 'specific or absolute characteristics' are actionable misrepresentations, but 'general, subjective claims' are puffery").

Mondelēz reasons that the term "sustainable" is vague, subjective puffery, and its authorities agree. *See, e.g., Bullard v. Jaguar Land Rover Auto. PLC*, 2023 WL 4845873, at *14 (D.N.J. July 28, 2023) (holding that vehicles' "SAFETY AND SUSTAINABILITY" labels were puffery); *Krakauer v. Recreational Equip., Inc.*, 2024 WL 1494489, at *11 (W.D. Wash. Mar. 29, 2024) (same, when defendant claimed it "put[s] sustainability at the center of how [it] makes products"); *Cohen v. Porsche Cars N. Am., Inc.*, at *3 (C.D. Cal. Dec. 6, 2019) (same, when defendant claimed it is "extremely sensible" as to "quality and sustainability").

But Mondelēz does not use "sustainable" in a vacuum. A reasonable consumer could plausibly believe it defined by back-label "protect[ing] people & planet" language, and quantified by the front-label "100%" promise. Mondelēz's arguments that the FTC "found that the term 'sustainable' has no single environmental meaning," and that "no two companies define 'sustainability' in the same way," are unavailing when the packaging provides its own context. [Dkt. 57 at 19–20.]

*Walker*, 2022 WL 901553, and *Sanchez*, 733 F. Supp. 3d 653 are instructive. In *Walker*, a cocoa case, Nestlé claimed that its products are "sustainably sourced based on the Nestlé Cocoa Plan, which is said to help improve the lives of farmers and support them." 2022 WL 901553, at *3 (cleaned up). The court found this definite statement "at odds with … the child labor problem," and therefore plausibly deceptive. *Id.* Then, in *Sanchez*, the court held that a reasonable consumer could plausibly interpret a "Sustainably Sourced – 100% – Sustainability" label "to mean that 100% of the practices used in harvesting the seafood was sustainable." 733 F. Supp. 3d at 672.

Here, Mondelēz effectively makes both claims. A reasonable consumer could plausibly read these in tandem, believing that Oreo's sourcing practices are, from a people and planet perspective, 100% sustainable.

Waggener Van Meter also argues that the "100%" label undermines Mondelēz's argument that its representations are aspirational. She describes it as a "categorical, present-tense promise with no qualifiers or limitations. That framing leaves no ambiguity: it conveys that Mondelēz's supply chain is already fully sustainable—free from child labor and environmental harm." [Dkt. 64 at 22.] This is plausible, and *Sanchez*'s conclusion—that a "reasonable consumer could [] read the promise … to mean that 100% of the practices used … was sustainable"—is on point. 733 F. Supp. 3d at 672.

So, while the court recognizes that Mondelēz intended something different— that 100% of cocoa is sourced from Cocoa Life, which has sustainable aspirations— Waggener Van Meter's reading is also plausible. And here, "the only relevant understanding … is that of the reasonable consumer." *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 670 (N.D. Cal. 2024).

Finally, Mondelēz contends "a plaintiff cannot plausibly allege that a defendant's labeling is misleading when it directs consumers to a website that clarifies the meaning of that statement," as Oreo's label does here. [Dkt. 57 at 22.] For this, it cites *Ehlers v. Ben & Jerry's Homemade Inc.*, 2020 WL 2218858, which is neither precedential nor analogous. There, the "entire claim is grounded on a single phrase in a single heading on a multipage *website*"—*not* the product itself. *Id.* at *7 (emphasis added). Offline consumers are situated differently.

In fact, the court in *Ehler* agreed that "reasonable consumers should not be required to search through the website and [reports] to clarify a heading on a webpage," but distinguished the plaintiff's situation, in which context immediately followed. *Id.* at *6. Someone like Waggener Van Meter is more like the former, having to take additional, external steps to clarify what otherwise seems clear. *See id.* at 7 (observing that reasonable consumers are unlikely to "access [websites] in advance of or contemporaneously with his or her purchasing decision"). *See also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth … in small print on the side of the box").

Therefore, as to Oreo's alleged misrepresentations, the CLRA claim survives.

### b.    Derivative Claims

Waggener Van Meter raises additional claims for violations of the UCL and unjust enrichment. [Dkt. 52 ¶¶ 89, 104.] The parties agree that these claims are derivative of the first, so they too survive. [Dkt. 64 at 15; Dkt. 66 at 10.]

### III.    Conclusion

For these reasons, Mondelēz's motion to consolidate this case and *Pearson* is denied. The motion to dismiss is granted as to Waggener Van Meter's lack of standing for unpurchased products and injunctive relief, and is otherwise denied.

Enter: 24-cv-7368 *and* 25-cv-10819
Date:   December 18, 2025

_____
Lindsay C. Jenkins

16